**In re SCHEPPS FOOD STORES, INC., Stop N Go Markets of Georgia, Inc., National Convenience Stores Incorporated, Stop N Go Markets of Texas, Inc., Second NCS Realty Company, Third NCS Realty Company, Fourth NCS Realty Company, Sixth NCS Realty Company, Seventh NCS Realty Company, Ninth NCS Realty Company, Eighth NCS Realty Company, Tenth NCS Real-**

ty Company, Eleventh NCS Realty Company, Twelfth ·NCS Realty Company, Thirteenth NCS Realty Company, Kempco Petroleum Company, Hot Stop Foods, Inc., Texas Super Duper Markets, Inc., Jay's Washaterias, Inc., Debtors.

NATIONAL CONVENIENCE STORES
INCORPORATED, Plaintiff,

v.

George SHIELDS and Garry
Cocker, Defendants.

Bankruptcy Nos. 91–49816–H2–11, 91–
49818–H3–11 to 91–49835–H2–11
and No. 91–49816–H4–11.
Adv. No. 93–4454.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 8, 1993.

Craig J. Litherland Sheinfeld, Maley & Kay, Houston, TX, for debtors.

WILLIAM R. GREENDYKE, Bankruptcy Judge.

## MEMORANDUM OPINION

This adversary proceeding comes before me on Plaintiff's, National Convenience Stores Inc., motion for summary judgment. After a tumultuous beginning,[1] the case is in a position to allow consideration of Plaintiff's motion. Defendants, George Shields and Garry Cocker, have failed to file a response. Therefore, having considered the relevant pleadings on file, and in accordance with Bankruptcy Rule 7056, I find that Plaintiff is entitled to judgment as a matter of law, as further explained below.

## I.

### STATEMENT OF FACTS

National Convenience Stores, Inc. ("Debtor" or "NCS") filed a voluntary Chapter 11 bankruptcy (collectively with several other related entities) on December 9, 1991. Throughout the bankruptcy, Debtor continued to operate as a Debtor–in–Possession under Section 1107 of the Bankruptcy Code. 11 U.S.C. § 1107(a). Accordingly, Debtor's management remained in control of the company, and was responsible for formulating and negotiating a plan of reorganization. On February 24, 1993, the Debtor's Revised Fourth Amended and Restated Joint Plan of Reorganization was confirmed by me.

Within hours of the confirmation, Defendants Shields and Cocker, shareholders of the Debtor, brought a lawsuit (the "State Suit") in the 129th District Court of Harris County, Texas, against several of NCS' directors (the "Directors"). The Defendants' State Suit consists of a breach of fiduciary duty claim premised upon allegations that the Directors purposefully diluted all of the public shareholders' voting power in bank-

1. The Defendants initially attempted to withdraw the reference of this case under Section 157 of title 28 and Bankruptcy Rule 5011. 28 U.S.C. § 157(d); Fed.R.Bankr.P. 5011(a). Although the Defendants failed to submit their withdrawal motion to this Court for initial review, *see* Fed.

R.Bankr.P. 5011(c); Bankruptcy Local Rule 5011, my report and recommendation against withdrawal of the reference was entered of record on September 22, 1993. The District Court, Judge Hughes, denied the Defendants' motion on October 28, 1993.

ruptcy in order to elevate the Directors' equity in the reorganized company and to further entrench themselves in management. Defendants assert that after the bankruptcy was filed, the Directors purposefully allowed certain actions to be taken against the Debtor, causing an elimination of the Debtor's net worth. They claim the Directors did this in order to enable confirmation of a plan which forgave millions of dollars of debt owed by the Directors themselves, and which provided the Directors with a greater equity interest in the reorganized company to the detriment of all public shareholders. In this connection, Defendants have also requested class certification so as to continue the action on behalf of all other similarly situated shareholders.

On July 26, 1993, NCS initiated this adversary proceeding against Shields and Cocker seeking (1) a declaratory judgment that the State Suit is an action against property of the Debtor and in violation of this Court's confirmation order, and (2) a temporary and permanent injunction to prevent the continuation of the State Suit. Debtor filed its motion for summary judgment on September 15, 1993. Debtor argues that the State Suit is nothing more than an improper collateral attack upon the order of confirmation. Furthermore, Debtor contends that the State Suit is a premature shareholder derivative action involving a cause of action belonging to the Debtor itself under applicable law.

## II.

### JURISDICTION

Section 1334(b) of title 28 provides district courts with original jurisdiction over all civil proceedings "arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Provided there is jurisdiction over such a proceeding, a district court may refer it to the bankruptcy court located within the district. See id. § 157(a). Thus, as the Fifth Circuit has explained, the test for determining bankruptcy jurisdiction is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir.1987) (emphasis in original) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)).

■ Once a plan of reorganization has been confirmed, however, the estate is typically distributed in accordance with the plan, with the remaining, undistributed assets revesting in the debtor. See 11 U.S.C. § 1141(b). Consequently, the Wood test does not address the bankruptcy court's post-confirmation jurisdiction. A recent decision by a Louisiana District Court is helpful on this point. It explains that the test for bankruptcy jurisdiction post-confirmation is whether the matter will affect the bankruptcy court's ability to (1) protect its confirmation decree, (2) prevent interference with consummation of the plan, or (3) otherwise aid in the plan's operation. Eubanks v. Esenjay Petroleum Corp., 152 B.R. 459, 463 (E.D.La.1993). Thus, a bankruptcy court is not automatically divested of jurisdiction upon the confirmation of a plan. Id.; In re Cinderella Clothing Indus., Inc., 93 B.R. 373, 377 (Bankr.E.D.Pa.1988) (citing United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 373–74 (5th Cir. 1987), aff'd, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). In fact, in some instances the bankruptcy court is the only court with subject matter jurisdiction over a matter after the closing of the case, and is required to exercise such jurisdiction. See, e.g., Bradley v. Barnes (In re Bradley), 989 F.2d 802, 804 (5th Cir.1993) (finding that a bankruptcy court "must take jurisdiction" over potential Section 525 violations).

■ The current adversary proceeding involves issues which directly impact upon this Court's confirmation order. The outcome of this case and the State Suit could have a direct impact upon the Debtor's ability to consummate the plan of reorganization. Accordingly, I have jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a).

## III.

### SUMMARY JUDGMENT

■ Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure as applicable to motions for summary

judgment in bankruptcy adversary proceedings. Fed.R.Bankr.P. 7056. Generally, a motion for summary judgment may be granted if there is no genuine issue as to any material fact, entitling the movant to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Abbott v. Equity Group, Inc. (In re Ellington)*, 2 F.3d 613, 618–19 (5th Cir.1993).

The movant has the initial burden of establishing the propriety of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Jones v. NCNB Texas, N.A.*, 143 B.R. 687, 689 (S.D.Tex.1991), *aff'd*, 966 F.2d 169 (5th Cir.1992). Once met, the burden then shifts to the non-movant to adduce sufficient proof of an issue of fact. *See Abbott*, 2 F.3d at 619. In any event, all factual inferences must be resolved in favor of the non-movant. *Id.*

## IV.

### DISCUSSION

**A. Post–Petition Management of the Debtor**

■ Prior to bankruptcy, a director's duties to a corporation and its shareholders are generally governed by state law with the law of the company's state of incorporation controlling substantive corporate issues. *See Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir.1984); *Elster v. American Airlines, Inc.*, 34 Del.Ch. 94, 100 A.2d 219, 224 (1953). Under state law, a director owes a duty of care and loyalty. The duty of care requires a director to exercise that degree of care that an ordinarily careful and prudent person would exercise under the same or similar circumstances. *Graham v. Allis–Chalmers Mfg. Co.*, 41 Del.Ch. 78, 188 A.2d 125, 130 (1963). The duty of loyalty prohibits self-dealing and the usurpation of corporate opportunities. *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir.1984).

**1. Trustee's Duties**

■ Upon the filing of a bankruptcy under Chapter 11 of the Bankruptcy Code (the "Code"), these duties do not discontinue. However, governance of the corporation is supplanted by certain Code provisions. Initially, all of the corporation's legal and/or equitable interests in property are immediately transferred into an estate. 11 U.S.C. § 541(a). Next, the Code provides for takeover of the estate by a trustee. *See id.* §§ 323, 1106(a), 1108. The trustee owes certain fiduciary duties similar to a director's duties. *See id.* §§ 704, 1106; *see also Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 246 (5th Cir.1988). A trustee's constituency, however, is broadened under the Code to include not only the debtor and its shareholders, but also all of the debtor's creditors. *Slater v. Smith (In re Albion Disposal, Inc.)*, 152 B.R. 794, 813 (Bankr. W.D.N.Y.1993); *see also In re B. Cohen & Sons Caterers, Inc.*, 147 B.R. 369, 375 (Bankr.E.D.Pa.1992).

■ One of the trustee's responsibilities is to oversee the post-petition activities of the Debtor's remaining management as they relate to property of the estate. Consequently, if a breach of duty on the part of a director is discovered, it is the trustee who is responsible for taking appropriate action. As the United States Supreme Court has explained:

> While normally [a director's] fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation enforceable by the trustee. For that standard of fiduciary obligation is designed for the common community of interests in the corporation—creditors as well as stockholders.

*Pepper v. Litton*, 308 U.S. 295, 306–07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); *see also In re E.F. Hutton S.W. Properties II, Ltd.*, 103 B.R. 808, 813 (Bankr.N.D.Tex.1989) [herein *"E.F. Hutton"*].

**2. Duties of a Debtor–in–Possession**

■ Section 1107(a) of the Code enables a debtor to take the place of the trustee, with a few exceptions, as a Debtor–in–Possession. 11 U.S.C. § 1107(a). Recognizing that corporations are in reality legal fictions, in such instances it is the debtor's management which takes on the heightened fiduciary obligations of the trustee. *Slater*, 152 B.R. at

813. This arrangement can present a conflict of interest for the debtor's management who, on the one hand, must act in the best interests of the corporation and shareholders, and on the other hand, must act in the best interests of the estate, shareholders and creditors, collectively (directors qua trustee). *See generally* Harvey R. Miller, *Corporate Governance in Chapter 11: The Fiduciary Relationship Between Directors and Stockholders of Solvent and Insolvent Corporations*, 23 Seton Hall L.Rev. 1467 (1993).

### B. Prosecution of Fiduciary Duty Causes of Action

 Property of the estate includes choses in action. *E.F. Hutton*, 103 B.R. at 811; *see also In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253–54 (5th Cir.1986). "Whether an action belongs to the estate depends upon how the action is characterized under applicable state (or federal) law." *E.F. Hutton*, 103 B.R. at 811; *see also S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1152–53 (5th Cir.1987). In the event that the action belongs to the estate, the trustee/Debtor-in-Possession has the power and obligation to pursue the action for the benefit of all creditors and shareholders. *Louisiana World Exposition*, 858 F.2d at 246; *E.F. Hutton*, 103 B.R. at 812.

### C. Characterization of the State Suit

One of the underlying questions in this case involves whether the State Suit consists of a cause of action for breach of fiduciary duty to NCS and shareholders as a whole, or to shareholders individually. If the action is for a breach to the company and shareholders as a whole, making it derivative in nature, then the action was at one time property of the estate. *See* 11 U.S.C. § 541(a)(7). Upon confirmation, the action would have been transferred to NCS pursuant to Section 1141 of the Code. *Id.* § 1141(b).

 The Debtor is a Delaware corporation; therefore, Delaware law controls whether the claim is derivative or personal in nature. *See Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir.1992); *Elster*, 100 A.2d at 224. The general Delaware rule on characterization has been set forth in *Moran v. Household International, Inc.*, 490 A.2d 1059 (Del.Ch.), *aff'd*, 500 A.2d 1346 (Del.1985):

> In determining whether a complaint states an individual or a derivative cause of action, the Court is not bound by the designation employed by the Plaintiff. Rather, the nature of the action is determined from the body of the complaint. To set out an individual action, the plaintiff must allege either "an injury which is separate and distinct from that suffered by other shareholders," or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation.

*Id.* at 1069–70 (citations omitted). In cases where the breach of duty involves mismanagement, waste of corporate assets or entrenchment, harming all shareholders equally, suits are typically characterized as derivative in nature. *See, e.g., Brug v. The Enstar Group, Inc.*, 755 F.Supp. 1247, 1257 (D.Del. 1991) (finding claims of fraud and deceit in connection with corporate restructuring plan which depressed value of common stock to be derivative); *Kramer v. Western Pac. Indus., Inc.*, 546 A.2d 348, 351–53 (Del.1988) (finding allegations that directors had improperly approved "golden parachutes" and paid unnecessary fees and expenses in six months preceding merger to be derivative); *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del.1970) ("When an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively"); *Shapiro v. Pabst Brewing Co.*, No. 7339, 1985 WL 11578, at *4 (Del.Ch. Jul. 30, 1985) (finding a complaint of director entrenchment and waste of corporate assets to be derivative in nature); *Moran*, 490 A.2d at 1070–71 (treating claims of entrenchment through "poison pill" preferred stock rights dividend plan as derivative).

 The Defendant's State Suit consists of the type of alleged harm that involves all shareholders equally. The Defendants complain of the mismanagement of NCS. They complain of dilution of all of the shareholders' voting power. Finally, they complain of

entrenchment and self-dealing. All of these misdeeds allegedly occurred post-petition, but pre-confirmation. Therefore, the underlying cause of action for breach of fiduciary duty, if viable, became property of the estate pursuant to Section 541 of the Code. 11 U.S.C. § 541(a)(7). Upon confirmation, it then vested in NCS as undistributed estate property. *Id.* § 1141(b). Therefore, the State Suit is a premature attempt to exercise the rights of NCS—the Defendants having failed to make a proper demand for action to the corporation before instituting the derivative action. *See Rales,* 971 F.2d at 1047–48.

D. Remedies in Bankruptcy for Mismanagement by Directors of a Debtor–in–Possession

Even so, there is an even more compelling reason why the State Suit should be prevented from going forward. As discussed above, the Bankruptcy Code provides for a supplemental scheme of governance over the estate during the period of reorganization. For example, the Code details authorization procedures for certain high risk transactions. *See, e.g.,* 11 U.S.C. § 363 (use, sale, or lease of estate property), § 364 (obtaining credit post-petition). In addition, it provides all creditors and interest holders who will be impaired under the ultimate plan of reorganization with a right to vote on its acceptance or rejection. *Id.* §§ 1124, 1126.

 More importantly, and in the context of this lawsuit, the Code provides creditors and equity holders with specific remedies in the event of director malfeasance during the course of bankruptcy. Shareholders may seek to replace the Debtor–in–Possession with an independent trustee or examiner. *Id.* § 1104. Much like a derivative suit, creditors' and equity holders' committees may obtain standing to pursue a cause of action for breach of fiduciary duty on behalf of a debtor where a colorable claim exists which the debtor has refused to assert. *See Louisiana World Exposition,* 858 F.2d at 247; *E.F. Hutton,* 103 B.R. at 813. Shareholders may also seek subordination of a director's claim against the estate. 11 U.S.C. § 510(c). Where matters appear incapable of remedy under Chapter 11, conversion to

Chapter 7 liquidation is a possibility. *Id.* § 1112(b). Finally, shareholders may object to confirmation of the plan of reorganization on the basis of improper dilution of shareholder voting power, entrenchment and/or improper enrichment of the debtor's directors. *See id.* § 1129(a)(3), (b). Consequently, while state law standards continue to apply to post-petition fiduciary obligations, the rights and remedies of aggrieved shareholders and creditors during the post-petition/pre-confirmation period are regulated by the Bankruptcy Code which controls state law pursuant to the Supremacy Clause of the United States Constitution. U.S. Const. art. VI.

 Congress intended to set in place a complete scheme for successful reorganization. To allow state law to control governance of a Chapter 11 debtor during this time frame would be to enable disgruntled shareholders to delay, and possibly short-circuit, the reorganization policy set forth in the Bankruptcy Code. No equity holders' committee sought the appointment of a trustee in the NCS bankruptcy; nor did one seek conversion of the case. Furthermore, it does not appear that a demand was ever levied upon NCS, as Debtor–in–Possession, to pursue a cause of action against the Directors for breach of fiduciary duties. Finally, and most significantly, while it appears that the Defendants may have been part of an unofficial committee which objected to the plan, the order of confirmation was never appealed by anyone. The order is final and res judicata shall apply. Consequently, the State Suit is an improper attempt to interfere with the confirmation order, reorganization process and plan of reorganization, and should be precluded from going forward as a matter of law.

## V.

### ORDER

Accordingly, the Plaintiff's motion for summary judgment shall be GRANTED. Furthermore, the foregoing shall supplement

this Court's Order of Summary Judgment signed October 29, 1993.