In re **REFRIGERANT RECLAMATION CORPORATION OF AMERICA, formerly Refrigerant Recovery Corporation of America, Debtor.**

**REFRIGERANT RECLAMATION CORPORATION OF AMERICA,**
Plaintiff,

v.

**James J. TODACK and Paul N. Katz, Defendants.**

**Bankruptcy No. 393–09597.
Adv. No. 395–0027A.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 6, 1995.

William L. Norton, III, Boult, Cummings, Conners & Berry, Nashville, TN, for debtor.

L. Wearen Hughes, Bass, Berry & Sims, Nashville, TN, for defendants.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issues are whether this court has subject matter jurisdiction of this post confirmation dispute between the reorganized debtor and a major creditor; and if so, whether abstention is appropriate under 28 U.S.C. § 1334(c). This court has jurisdiction. Abstention is not warranted. The following are findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### I.

Refrigerant Reclamation Corporation of America filed Chapter 11 on December 14, 1993. RRCA's plan of reorganization was confirmed on July 12, 1994. No final decree has been entered and the case remains open.

Todack was an insider of the debtor and its most important creditor. After much litigation and negotiation, Todack was provided for in the plan pursuant to the terms of an agreed order. *Refrigerant Recovery Corp. of Am. v. Todack (In re Refrigerant Recovery Corp. of Am.)*, Adv. Pro. 393–0496A, Agreed

Order Resolving Objection and Claims in Bankruptcy Case and Adversary Proceeding Regarding James T. Todack and Industrial Chiller Services, Inc. (Bankr.M.D.Tenn. Mar. 10, 1994). The agreed order gave Todack a secured claim of $1 million collateralized by the patented technology that enables the debtor to recover and recycle industrial quantities of refrigerants. Debtor originally purchased the patent from an entity controlled by Todack. Todack also retained an unsecured claim of $880,000.

Less than seven months after confirmation, RRCA filed this adversary proceeding seeking relief from what it characterized as unreasonable demands by Todack for information. Consistent with the confirmed plan, Todack and the debtor executed an Amended and Restated Security Agreement and an Amended and Restated Promissory Note. Pursuant to his interpretation of these new agreements, Todack demanded that the reorganized debtor disclose sensitive financial information, including profit and loss statements, and an inventory of equipment identified by serial number, location and value. RRCA supplied an inventory, only to receive a further demand for a more detailed inventory. RRCA responded with a more detailed inventory and supplied a current balance sheet. Todack then demanded a certified, audited financial statement.

RRCA contends that Todack ignored the information it supplied, and on January 9, 1995, declared a default under the new security agreement, and note, and accelerated the debt. It is conceded that there is no monetary default under the new note. RRCA attempted to resolve this disagreement through negotiation, including the offer of a confidentiality agreement, which Todack refused.

Citing 11 U.S.C. § 1142,[1] Todack characterizes this dispute as a breach of contract

1. 11 U.S.C. § 1142 provides:
 (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

 (b) The court may direct the debtor and any other necessary part to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

action over which this court lacks subject matter jurisdiction. Alternatively, Todack asks for abstention under 28 U.S.C. § 1334(c).[2]

## II.

■ "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute." *Celotex Corp. v. Edwards,* —— U.S. ——, ——, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). Bankruptcy court jurisdiction is derivative of the jurisdictional grant to district courts under 28 U.S.C. § 1334.[3] *See* 11 U.S.C. § 157(a) (each district court may provide that "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... be referred to the bankruptcy judges for the district.").

Sections 1334 and 157 of title 28 are the sources of subject matter jurisdiction for the bankruptcy courts. *See generally* 1 WILLIAM L. NORTON, JR., NORTON BANKR.LAW & PRAC.2D § 4.1 at 4–12 (1994). The Bankruptcy Code—title 11—defines what the bankruptcy courts can do within the jurisdictional grant in title 28. Title 11 nowhere purports to circumscribe the subject matter jurisdiction of the bankruptcy courts in Chapter 11 cases.[4]

Several reported decisions limit the post confirmation jurisdiction of the bankruptcy courts in Chapter 11 cases without proper respect for the broad jurisdictional grant in 28 U.S.C. § 1334(a) & (b). *See Hospital &*

*University Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 7 F.3d 32, 34 (2d Cir.1993) ("A bankruptcy court retains post confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization ... [Post confirmation jurisdiction] is defined [exclusively] by reference to the plan."); *Walnut Assocs. v. Saidel,* 164 B.R. 487, 492 (E.D.Pa.1994) ("After a plan has been confirmed, subject matter jurisdiction is specifically conferred on the bankruptcy court to resolve only post confirmation matters. ..."); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology, Inc. (In re Atlantic Computer Sys., Inc.),* 163 B.R. 704 (Bankr.S.D.N.Y.1994) (If the plan and the order confirming the plan conflict over retained jurisdiction, the plan controls.); *In re Jr. Food Mart of Ark., Inc.,* 161 B.R. 462, 463 (Bankr.E.D.Ark.1993) ("The Bankruptcy Code [i.e., 11 U.S.C. § 1141] envisions very limited jurisdiction over a Chapter 11 case after confirmation of a plan."); *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.),* 111 B.R. 457 (Bankr. S.D.N.Y.1990) (11 U.S.C. § 1141 controls extent to which the court may retain jurisdiction post confirmation; section 1141(b) confers limited post confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan.); *In re Aylesbury Inn, Inc.,* 121 B.R. 675 (Bankr.N.D.N.Y.1990) (court may exercise post confirmation jurisdiction only to the extent retained in the plan and only with respect to matters pending at

---

**2.** 28 U.S.C. § 1334(c) provides in part:
 (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
 (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

**3.** 28 U.S.C. § 1334(a) and (b) provide:

 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**4.** *Contrast* the statutory limitation on bankruptcy court jurisdiction in Chapter 9 cases under 11 U.S.C. § 904.

confirmation.); *Pennsylvania Cos. v. Stone (In re Greenley Energy Holdings of Pa., Inc.)*, 110 B.R. 173 (Bankr.E.D.Pa.1990) (citations omitted) ("since at least 1944, courts have recognized the competing interests between retaining jurisdiction after confirmation until entry of the final decree ..., and ending the 'tutledge' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt on its responsibility.'"); *In re Iberis Int'l, Inc.*, 72 B.R. 624, 627 (Bankr.W.D.Wis.1986) (court retains jurisdiction over the debtor after confirmation for the limited purpose of insuring that the provisions of the plan of reorganization are carried out).

In *Postconfirmation Issues: The Effects of Confirmation and Postconfirmation Proceedings,* 44 S.C. L.Rev. 621 (1993) (hereinafter *"Postconfirmation Issues"*), Frank R. Kennedy and Gerald K. Smith offer a historical explanation for this reluctance of some courts to exercise post confirmation jurisdiction in Chapter 11 cases:

> Even though jurisdiction under 28 U.S.C. § 1334 and chapter 11 of the Bankruptcy Code is not expressly affected by confirmation of a plan, judges are hesitant to so conclude. The resistance is probably a carryover from the limited postconfirmation jurisdiction of chapter XI cases under the Bankruptcy Act and the clever wording in one decision under the Bankruptcy Act that deplored the tendency of district courts to keep reorganization concerns 'in perpetual tutelage' by orders retaining jurisdiction to supervise the debtor's conduct.

*Id.* at 637 & n. 37. *See also* 1 WILLIAM L. NORTON, JR., NORTON BANKR.LAW & PRAC.2D § 4:43 (forthcoming 1995) (Suggesting a second explanation, "[m]any of the decisions in which courts have stated they lack jurisdiction are more nearly akin to the notion that a court should abstain ... the courts have merged the jurisdictional concept of 'relatedness,' on the one hand, with their § 1334(c)(1) authority to abstain in the interest of justice.").

The former Bankruptcy Act contained a jumble of jurisdictional provisions, different from chapter to chapter, interspersed with substantive law, and changing as a reorganization case moved toward confirmation. For example, the jurisdictional web that governed Chapter XI cases under the Act required that retention of jurisdiction be addressed expressly in the plan of arrangement. *See* 11 U.S.C. §§ 757(7), 767(4), 768 & 769 (1976) [repealed 1978]. In Chapter XIII wage earner cases, section 658 of the former Act granted jurisdiction after confirmation to assure creditors that the debtor would actually make payments under the plan. *See* 11 U.S.C. § 1058 (1976) [repealed 1978]; 11 U.S.C. § 1011 (1976) [repealed 1978] (section 611 of the Act granted exclusive jurisdiction over Chapter XIII debtors' wages and earnings during the period of the plan). *See also* 11 U.S.C. § 882 (1976) [repealed 1978] (in real property arrangements under Chapter XII, section 482 of the Act assumed but did not specifically prescribe some retention of jurisdiction after confirmation); 11 U.S.C. § 628 (1976) [repealed 1978] (In corporate reorganizations under Chapter X of the Act there was no express provision for post confirmation jurisdiction; however, section 228(3) provided authority to reserve jurisdiction upon entry of the final decree to make orders necessary and proper in carrying out, or putting into effect, the confirmed plan.).

In 1978, Congress purposefully rejected the piece-meal jurisdictional scheme of the former Act. *See Postconfirmation Issues, supra* at 634. In its place, Congress enacted a single grant of comprehensive jurisdiction that would enable the bankruptcy courts to deal "efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* — U.S. —, — – —, 115 S.Ct. 1493, 1498–9. The severance of jurisdictional and substantive provisions was accomplished by moving the jurisdictional language into the Judicial Code—title 28—leaving the substantive law of bankruptcy in title 11.[5] *See* 1 WILLIAM L.

---

**5.** The distinction between substantive rights and powers and subject matter jurisdiction was often confused in Act cases. In the context of post confirmation jurisdiction in Chapter 11 cases, this distinction continues to produce some confusion. *See, e.g., In re Jr. Food Mart of Ark., Inc.,* 161 B.R. 462, 463 (Bankr.E.D.Ark.1993) ("The Bankruptcy Code [i.e., 11 U.S.C. § 1141] envi-

Norton, Jr., Norton Bankr.Law & Prac.2d § 4.1 at 4–12 (1994).

■ That a dispute arises after confirmation does not affect analysis of bankruptcy court jurisdiction under 28 U.S.C. § 1334. *See Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459, 460–2 (E.D.La.1993); *National Convenience Stores, Inc. v. Shields (In re Shepps Food Stores, Inc.),* 160 B.R. 792 (Bankr.S.D.Tex.1993). *See also Postconfirmation Issues, supra* at 632–4 ("[S]ince the confirmation of a plan in a Chapter 11 cases does not terminate a case, there should be no change in basic jurisdiction of the court under 28 U.S.C. § 1334(a) & (b)."); 1 William L. Norton, Jr., Norton Bankr.Law & Prac.2d § 4:43 (forthcoming 1995) ("post-confirmation jurisdiction exists by reason of the plain text of § 1334(b), not because of a provision of the confirmed plan or an order of the court").

The jurisdictional issue here is whether this adversary proceeding falls within 28 U.S.C. § 1334(b). Section 1334(b) grants the district court original and concurrent jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Sixth Circuit has parsed the language of § 1334(b):

[F]or the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third and fourth categories (proceedings 'arising under,' 'arising in,' and 'related to' a case under title 11). These references operate conjunctively to define the scope of the jurisdiction. [citation omitted.] Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.

*Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1141 (6th Cir.1991).

The Sixth Circuit has adopted this test for "relatedness":

The test of 'whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*' *Robinson v. Michigan Consol. Gas. Co.,* 918 F.2d 579, 583 (6th Cir.1990) (emphasis in original) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 991 (3d Cir.1984)). The proceeding need not be against the debtor or the debtor's property as long as 'the outcome could alter the debtor's rights, liabilities, options or freedom of action....' *Id.*

*8300 Newburgh Road Partnership v. Time Constr., Inc. (In re Time Constr., Inc.),* 43 F.3d 1041, 1045 (6th Cir.1995).[6]

In *Wolverine Radio,* the Sixth Circuit applied its broad construction of § 1334(b) to a dispute that arose after confirmation of a Chapter 11 plan. The jurisdictional question was the same as here: whether the controversy was "related to" the bankruptcy case within the meaning of § 1334(b). The liquidating plan in *Wolverine* called for the sale of a radio station to Pattern Corporation. The sale was closed and Pattern then assigned its interest in the station to JOSI Broadcasting Company. JOSI was advised by the Michigan Employment Security Commission ("MESC") that its statutory payments to the state's unemployment security fund would be set by reference to the debtor's payment

sions very limited jurisdiction over a Chapter 11 case after confirmation of a plan."); *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.),* 111 B.R. 457 (Bankr.S.D.N.Y.1990) (11 U.S.C. § 1141 controls the extent a court may retain jurisdiction post confirmation. Section 1141(b) confers limited post confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan.).

**6.** The United States Supreme Court recently cited with approval *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), which defines "related to" jurisdiction to be as broad as permitted by the Constitution. *Celotex v. Edwards,* — U.S. —, — — —, 115 S.Ct. 1493, 1498–9, 131 L.Ed.2d 403 (1995) ("We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor* ... that 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' ... and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving property of the debtor or the estate.").

history. Because the debtor had a poor payment history, JOSI's contribution rate was significantly higher than the rate for a new employer. *Id.* at 1136.

Concerned that JOSI would invoke an indemnity provision of the sales contract, the debtor returned to bankruptcy court seeking "enforcement" of the confirmation order and prohibition against MESC's use of the debtor's contribution rates to calculate JOSI's payments. The bankruptcy court ruled in favor of the debtor. The district court reversed. On appeal to the Sixth Circuit, MESC challenged the bankruptcy court's jurisdiction to determine JOSI's tax liability, which it characterized as a dispute between two nondebtors.

The Sixth Circuit held that the proceeding was within the "related to" jurisdiction of the bankruptcy court under § 1334(b):

the outcome of this action to determine MESC's authority to transfer the debtor's experience rating to JOSI and to determine JOSI's liability under the Michigan Employment Security Act, ..., will in no way determine any rights, liabilities, or course of action of the debtor nor affect the debtor's liability under MESA.

However, although [debtor] would not be affected until and unless JOSI invoked the indemnification section of the purchase agreement, we have held that where the parties 'are more intertwined ... the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceedings.' *In re Salem [Mortgage Co.],* 783 F.2d at 635.

*In re Wolverine Radio Co.,* 930 F.2d at 1143.

Here, RRCA and Todack are more "intertwined" than the parties in *Wolverine Radio.* Todack is not just a creditor. Todack was an insider of the debtor at the commencement of this case. Todack holds a dominant secured claim for one million dollars and an unsecured claim nearly equal in amount. Todack's claim is secured by the patent which the debtor purchased from Todack. The patent is fundamental to RRCA's business and is RRCA's most valuable asset. Without the patent RRCA would not be able to fulfill its obligations under the confirmed plan.

This adversary proceeding will have an immediate and determinative effect on RRCA's ability to perform under its confirmed plan. This proceeding is at least "related to" this Chapter 11 case under the standards of *Wolverine Radio.*

## III.

■ Alternatively, Todack argues for abstention. 28 U.S.C. § 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1334(c)(1) acts as a brake on the broad jurisdiction conferred by 28 U.S.C. § 1334(b)(1). Section 1334(c)(1) "is sufficient to keep federal jurisdiction from becoming over extended." *Salem Mortgage Co. v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626, 635 (6th Cir.1986). As the Sixth Circuit explained in *Salem Mortgage:*

Congress wisely chose a broad jurisdictional grant and a broad abstention doctrine over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases.

*Id.* (citing Note, *Selective Exercise of Jurisdiction in Bankruptcy–Related Civil Proceedings,* 59 TEX.L.REV. 325, 334–36 (1981)).

However, concern with over extension of bankruptcy jurisdiction is itself leavened by the general rule that: "Abstention 'is the exception to the rule that federal courts should hear and decide matters properly before them.'" *West Coast Video Enters., Inc. v. Owens (In re West Coast Video Enters., Inc.),* 145 B.R. 484, 488 (Bankr.E.D.Pa.1992) (quoting *Ronix Corp. v. Philadelphia,* 82 B.R. 19, 20 (E.D.Pa.1988)). *See also Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992) ("Abstention should rarely be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jur-

isdiction given them.'"). As stated by one court, abstention "is therefore typically reserved for matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented, [citation omitted]; the proceeding has been removed from state court and/or there is a parallel state court action pending, [citation omitted]; the proceeding involves principally claims asserted by or against nondebtors [citation omitted], or some other truly extraordinary aspect is present. [citation omitted.]" *In re West Coast Video Enters., Inc.*, 145 B.R. at 488. Factors relevant to the abstention inquiry include:

'(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.'

*In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993) (quoting *In re Eastport Assoc.*, 935 F.2d at 1075–76 (quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir.1990)) (footnote omitted)).

Here, the measure of these factors does not support abstention. In the post confirmation context the effect of abstention on administration of the estate is appropriately focused on the bankruptcy court's ability to enforce its confirmation order and to prevent inappropriate interference with consummation of the plan. *See National Convenience Stores, Inc. v. Shields*, 160 B.R. at 796 (citing *Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 463 (E.D.Pa.1993)). This factor supports RRCA's choice of forum. At stake here is the ability of the reorganized debtor to fulfill its obligations under the confirmed plan. This case bespeaks of an attempt by a disgruntled creditor to take a second bite at the apple—unsuccessful at defeating confirmation, Todack would now scuttle the debtor's reorganization by wrangling over claims of nonmonetary defaults under the boilerplate in the agreements required by the confirmed plan. The court is suspicious of Todack's actions, and abstention would disable this court to complete supervision of the rancorous relationship between the reorganized debtor and this creditor.

This proceeding is rooted in Texas law—a factor that favors, but does not alone require abstention. *See, e.g., In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir.1993). Looking deeper, the state law issues are neither novel nor unsettled. This proceeding is of little import to the legal community or to the general public of Texas. This court is well positioned to timely resolve these issues; this proceeding will not unduly burden this court's docket. *See In re Chicago, Milwaukee, St. Paul, & Pacific R. Co.*, 6 F.3d at 1189 n. 8. There is no parallel state action with which this proceeding would interfere.

The only jurisdictional basis for this proceeding is 28 U.S.C. § 1334 and this proceeding is non-core under 28 U.S.C. § 157(b)(2). However, as detailed above, this proceeding is fundamentally related to the Chapter 11 case. This is not a garden variety post petition breach of contract action. The debtor's post confirmation disagreement with Todack over the meaning of the words in the restated security agreement is in the nature of a continuation of the dispute that lead to this Chapter 11 filing. Under these circumstances RRCA's choice of forum is not suspicious or illegitimate—if anything, this court's familiarity with the history of these parties best positions this forum to resolve the next phase of this litigation.

Finally, the court must consider the right of the parties to trial by jury. No jury demand has been made, but Todack's counsel suggested that Todack would have a jury trial right in state court. If Todack's counsel is right, then Todack may have a right to trial by jury in this adversary proceeding. With consent, that jury trial is available expeditiously in this court. *See* 28 U.S.C. § 157(e). Absent consent, that jury trial moves across the street to the district court. *See Rafoth, Inc. v. National Union Fire Ins. Co. (In re Baker & Getty Fin. Servs., Inc.),* 954 F.2d 1169 (6th Cir.1992). The great weight of factors favoring resolution of this dispute in this forum is not overcome by the possibility that a jury will also be involved.