**In re S.N.A. NUT COMPANY, Debtor.**

**S.N.A. NUT COMPANY, Plaintiff,**

**v.**

**The HÄAGEN–DAZS COMPANY, Defendant.**

Bankruptcy No. 94 B 5993.
Adv. No. 96 A 01237.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 25, 1997.

---

Catherine Steege, Jenner & Block, Chicago, IL, for plaintiff.

Arthur G. Simon, Dannen, Crane, Heyman & Simon, Chicago, IL, for defendant.

Jeffrey C. Blumenthal, Chicago, IL, trustee.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This case comes before the Court on the Motion of Defendant, The Häagen-Dazs Company ("Häagen–Dazs"), to dismiss the complaint of Plaintiff, S.N.A. Nut Company ("Debtor") for lack of jurisdiction or, in the alternative, for abstention. Debtor's Complaint seeks to recover damages for breach of contract (the "Complaint"). The issues presented highlight one of the distinctions between operating and liquidating plans. For the reasons set forth herein, this Court finds that it has "related to" jurisdiction to hear the Complaint. Further, this Court declines abstention in this matter.

## I. FACTUAL BACKGROUND

Debtor is an Illinois corporation with its former principal place of business located in Elk Grove Village, Illinois. Häagen–Dazs is a New Jersey corporation with its principal place of business located in Teaneck, New Jersey.

The Complaint alleges that, pre-petition, Debtor and Häagen–Dazs entered into a series of sales contracts under which Debtor agreed to sell Häagen–Dazs various types of processed nuts. Häagen–Dazs thereafter refused to accept significant quantities of finished goods specially manufactured to suit Häagen–Dazs' needs.[1] After confirmation of its liquidating plan, Debtor filed this Complaint seeking damages for Häagen–Dazs' breach of contract. Häagen–Dazs filed a Motion to Dismiss the Complaint for lack of jurisdiction or, in the alternative, for abstention.

## II. DISCUSSION

The issue presented is to what extent does a Bankruptcy Court have jurisdiction, under

---

1. Although not specifically alleged, it would seem that the refusal occurred during the pendency of the bankruptcy proceedings.

a liquidating plan in a Chapter 11 case, to hear a dispute initiated post-confirmation.

## A. Jurisdiction

■ District Courts have subject matter jurisdiction over bankruptcy matters pursuant to 28 U.S.C. § 1334 which states, in part, that "the District Court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[2] The United States Bankruptcy Court acts as an adjunct of the District Court in exercising this jurisdiction. *Diamond Mortgage Corporation of Illinois v. Sugar,* 913 F.2d 1233, 1238 (7th Cir.1990) *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991). District Courts are authorized to refer all bankruptcy cases to the Bankruptcy Judges for the District. 28 U.S.C. § 157(a). General Rule 2.33(A) of the United States District Court for the Northern District of Illinois provides a blanket referral for all bankruptcy cases. Bankruptcy Judges can enter final orders in "core" proceedings arising under title 11 pursuant to 28 U.S.C. § 157(b)(2), or submit proposed findings of fact and conclusions of law in non-core proceedings which are "otherwise related to" a case under title 11 pursuant to § 157(c)(1).

■ The Seventh Circuit has defined a proceeding as core if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Diamond Mortgage,* 913 F.2d at 1239. In other words, core proceeding include matters that "arise under" title 11 or "arise in" a title 11 case.

■ The Bankruptcy Court has jurisdiction over noncore proceedings when they "relate to" a case under title 11. A proceeding "relates to" the bankruptcy if it affects the amount of property to be distributed or allocated among creditors. *In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987); *Pettibone v.*

*Easley,* 935 F.2d 120, 123 (7th Cir.1991); *In re FedPak Systems, Inc.,* 80 F.3d 207, 213–214 (7th Cir.1996).

■ In determining jurisdiction, the Bankruptcy Court must first determine whether jurisdiction exists under 28 U.S.C. § 1334 and then determine what powers it may constitutionally exercise under § 157. *In re Pettibone Corp.,* 135 B.R. 847 (Bankr.N.D.Ill. 1992).

### 1. The Current Proceedings are Non-core

■ The Complaint alleges that this is a "core" proceeding. This lawsuit is a traditional state-court type of law suit, involving a claim for damages arising from breach of contract.

The Complaint does not involve a question arising from a statutory section under title 11, nor does it involve an administrative matter that arises only in a bankruptcy case. This Court has previously held that when a complaint can stand alone in a state forum it is noncore. *See, Lawndale Steel Co. v. Fairlane Steel, Inc. (In re Lawndale),* 1991 WL 242977, *4 (Bankr.N.D.Ill.1991). But for Debtor's bankruptcy case, this action would have been brought in state court. Accordingly, the proceedings are noncore.[3]

### 2. The current proceedings are "related to" Debtor's bankruptcy case

This Court may still entertain jurisdiction if the proceedings are "related to" Debtor's bankruptcy case. Häagen–Dazs has argued that this Court lacks "related to" jurisdiction because the Complaint was filed post-confirmation and, therefore, there is no longer a bankruptcy estate to which it can "relate".

■ Generally, confirmation of a plan under Chapter 11 revests the debtor's property from the bankruptcy estate in the debt-

---

**2.** All references to "title 11" herein refer to the Bankruptcy Code of 1978 as amended from time to time.

**3.** Debtor has argued that the Complaint is actually a counter-claim against Häagen–Dazs' proof of claim, therefore it is core because counterclaims by the estate against parties filing claims against

the estate are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(C). Debtor's argument is untenable. The Complaint was filed one week prior to the filing of Häagen–Dazs' proof of claim and the proof of claim was subsequently disallowed.

or pursuant to Code § 1141(b) and (c). *In re NTG Industries*, 118 B.R. 606 (Bankr. N.D.Ill.1990), *citing, In re Ford*, 61 B.R. 913, 917 (Bankr.W.D.Wis.1986). When property revests in the debtor the bankruptcy estate no longer exists. The Seventh Circuit has held that Bankruptcy jurisdiction does not follow the property, but lapses when the property leaves the estate. *See, In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182, 1188 (7th Cir.1986); *In re Xonics*, 813 F.2d 127, 131 (7th Cir.1987).

■ Nevertheless, plan confirmation does not always divest a bankruptcy court of all jurisdiction. Section 1141(b) of title 11 permits a debtor to provide that property shall not always revest, so that the bankruptcy court retains jurisdiction over some or all of the assets of the estate which have not revested in the debtor. § 1141(b) states:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of the plan vests all property of the estate in the debtor.

### a. Liquidating Plans

Debtor's Plan ("Plan") was confirmed on December 6, 1994. The Plan is what is commonly referred to as a "liquidating plan." The corporate Debtor has ceased operations. Thomas Dalton is designated by the Plan as the person, on behalf of the Debtor, who shall prosecute causes of action and liquidate Debtor's assets for the benefit of creditors. As stated in the Introduction section of the Plan:

> This Plan contemplates an orderly liquidation of the Debtor's property, the resolution of certain disputes and the distribution of the proceeds of the Debtor's estate and certain other funds to its creditors.

Section 2.2 of the Plan, in accordance with Section 1141(d)(3), provides, since we have a corporate liquidating debtor, that the Debtor shall not receive a discharge. As a practical matter, a Plan which provides for total liquidation, with distribution of all assets to the creditors, could not yield any assets which would revest in any debtor.[4]

In a successful operating reorganization, the Debtor embarks into the voyage through Chapter 11 burdened with debt which cripples its operations. In the course of its reorganization, a debtor is sheltered by the automatic stay of Section 362 (11 U.S.C. § 362). Its obligations, operations and asset base may be altered through negotiations and contest during the debtor-in-possession phase. What emerges is a fledgling restructured entity with newly-defined credit and structure. The debtor-in-possession protective shell is discarded with the emergence of a reorganized debtor. That reorganized entity embarks into the marketplace as an independent operating entity. So that it may function, all the assets are revested in the new entity. In exchange for those assets and the opportunity they represent, the fledgling entity carries with it the baggage of redefined prepetition and debtor-in-possession debt which must be retired over time while it is engaged in normal commercial operations. Once that entity is launched there is no longer any need for bankruptcy court involvement.

In contradistinction, in the normal course, a liquidating plan has no future in the marketplace. No resulting entity succeeds the debtor-in-possession hiatus. The liquidating plan has the same basic function as a Chapter 7 Trustee. Its *raison d'etre* is to liquidate assets—physical, inchoate, goodwill or others—into a readily distributable form, usually (though not always) cash, which are distributed to creditors for debt incurred prior to confirmation. The liquidation purpose is effectuated by the bankruptcy estate, via the trustee, creditors' committee or disbursing agent, marshaling assets for distribution to creditors. Disputes between the Debtor and others that develop out of the liquidation are the responsibility of the bankruptcy courts.

### b. The S.N.A. Plan

■ The Plan specifically provided that all assets, including litigation recoveries, if any, would remain in Debtor's estate, so that it would not revest in the Debtor. The Plan further authorized this Court to retain juris-

---

4. Unless, of course, there is a surplus after the creditors are paid in full.

diction post-confirmation over all adversary proceedings. The Plan states in pertinent part:

2.1 *Plan Funding.* The Plan shall be funded by the Debtor's existing and after-acquired property including the proceeds of the sale or liquidation of the Debtor's property and interests in property, including litigation recoveries and insurance proceeds. On the Consummation Date, all assets of the Debtor will remain in the Debtor's estate for distribution pursuant to this Plan.

\* \* \*

## ARTICLE XI

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case and the Debtor for the following purposes:

\* \* \*

11.2. To determine and adjudicate any and all adversary proceedings, including any pre- and post-confirmation Avoidance Actions, actions to collect accounts receivable or insurance claims and actions against Evans Porter & Bryant, and contested matters, applications and unmitigated matters related to the Debtor, the Plan or the Chapter 11 case.

These provisions fall within the exception of § 1141(b). The Plan clearly provides that all the assets remain in the estate, the bankruptcy estate retains a property interest in any litigation proceeds and clearly authorizes this Court to retain jurisdiction over adversary proceedings, thereby preventing any vesting of the litigation proceeds in the Debtor.

### c. *Jurisdiction*

■ This Court may not assert jurisdiction simply because jurisdiction is provided for in Debtor's Plan, *Zerand–Bernal Group Inc.v. Cox,* 23 F.3d 159(7th Cir.1994). Jurisdiction must still comply with the requirements set forth in Sec. 1334(b). See *Refrigerant Reclamation v. Todack (In re Refrigerant Reclamation),* 186 B.R. 78, 81 (Bankr.M.D.Tenn.1995) ("That a dispute

arises after confirmation does not affect analysis of bankruptcy court jurisdiction under 28 U.S.C. § 1334 [citations omitted].") In other words, the lawsuit must arise in or under title 11 or must be "related to" Debtor's bankruptcy case.

Once a Plan has been confirmed, the Bankruptcy Court is in a delicate position. As the District Court explained in *Zerand–Bernal Group, Inc. v. Cox,* 158 B.R. 459, 463 (N.D.Ill.1993) *aff'd* 23 F.3d 159 (7th Cir. 1994):

On the one hand, it is important for a bankruptcy court to retain jurisdiction so that it can monitor property transferred in accordance with the terms of the plan of reorganization; however, it is also important to end the reorganization process at some point so that the participants can go about their business without constant bankruptcy court supervision or approval.

*Cf. U.S. v. Unger,* 949 F.2d 231 (8th Cir. 1991).

■ Bankruptcy Court jurisdiction over post-confirmation matters is appropriate when adjudication has an impact on the estate or the recovery of the creditors. *Zerand–Bernal,* 158 B.R. at 463; See also, *In Re FedPak,* 80 F.3d 207(7th Cir.1996). In other words, post-confirmation jurisdiction is appropriate when the matter is "related-to" the bankruptcy case. *See Pettibone,* 935 F.2d at 122 ("Bankruptcy courts have jurisdiction under 28 U.S.C. § 1334(c)(1) to hear claims 'related to' the reorganization.") In *Zerand–Bernal,* the District Court held that the Bankruptcy Court was correct in determining that it lacked jurisdiction over a post-confirmation dispute involving a successor product liability action brought by the purchaser of debtor's assets to enjoin proceedings against it. The Court found that the plaintiff's action "would in no way impact the administration of the estate." 158 B.R. at 463. Other courts have exercised jurisdiction over post-confirmation disputes when the matter sufficiently impacted on creditors' recoveries under a plan of reorganization. *See Hunnicutt Co., Inc. v. TJX Co., Inc.,* 190 B.R. 157 (S.D.N.Y.1995) (Bankruptcy Court had "related to" jurisdiction over proceedings

where the debtor's lessor sought to recover rents against the lease guarantor; the outcome of the dispute had the potential to alter distribution of the estate to the creditors.) *In re Southern Industrial Banking Corp.,* 67 B.R. 399 (Bankr.E.D.Tenn.1986) (Bankruptcy Court had "related to" jurisdiction over an action by the Liquidating Trustee to recover over $132 million in claims under the Racketeer Influenced & Corrupt Organizations Act and federal and state securities laws against the Federal Deposit Insurance Corporation as receiver for ten failed banking institutions, because the outcome would "significantly impact the value of claims of the debtor's creditors.") *Refrigerant Reclamation Corp.,* 186 B.R. at 83 (Debtor's post-confirmation adversary proceedings against a former insider and creditor was within the bankruptcy court's subject matter jurisdiction because the dispute would have an "immediate and determinative effect" on the debtor's ability to perform under its confirmed plan.)

■ In this case, if the Debtor is successful, resolution of this dispute will directly impact the creditors of Debtor's estate. If Debtor is successful in this action, net litigation proceeds will go to the unsecured creditors. The substantial impact the resolution may have on the asset pool available for distribution to creditors makes "related to" jurisdiction appropriate.[5] Accordingly, this Court has jurisdiction pursuant to § 1334(b).

### B. Abstention

■ Häagen-Dazs seeks permissive abstention from this court under 28 U.S.C. § 1334(c)(1). As the party moving for abstention, Häagen–Dazs has the burden to establish that abstention under § 1334(c)(1) is appropriate. *In re Carlson,* 202 B.R. 946, 949 (Bankr.N.D.Ill.1996), *citing, Brizzolara v. Fisher Pen Co.,* 158 B.R. 761, 769 (Bankr. N.D.Ill.1993); *In re Chapman,* 132 B.R. 153 (Bankr.N.D.Ill.1991). In general, abstention is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct.

1236, 1244, 47 L.Ed.2d 483 (1976). Abstention is the exception rather than the rule. *In re Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993) ("*Chicago, Milwaukee*").

■ Under § 1334(c)(1), permissive abstention is allowed in the interest of justice, or comity with state courts, or respect for state law. *Carlson,* 202 B.R. at 949. The Seventh Circuit has outlined twelve factors to be applied flexibly when determining permissive abstention, with no one factor being determinative:

(1) the effect on the efficient administration of the estate, (2) the predomination of state law over bankruptcy issues, (3) the unsettled nature of the applicable law, (4) the presence of a related court proceeding, (5) the jurisdictional basis outside of 28 U.S.C. § 1334, (6) the relationship of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters, (9) the burden of the bankruptcy court's docket, (10) the likelihood of forum shopping, (11) the right to a jury trial, and (12) the presence of a non-debtor parties.

*Chicago, Milwaukee,* 6 F.3d at 1189.

In evaluating the above criteria for permissive abstention, this Court concludes, on balance, that abstention is inappropriate.

■ As previously discussed, the prime goal in a liquidating plan is the collection and distribution of assets. Disposition of this adversary will aid the efficient administration of the estate. This Court is familiar with Debtor's long-standing bankruptcy case and the prior disputes between these two parties. As an appropriate exercise of this Court's jurisdiction, no forum shopping is involved. The state law is standard legal application. The right to a jury trial, if any, is not determinative. There are no other court proceedings pending. On balance, this proceeding should remain where it was filed.

---

**5.** Most of the "related to" cases deal with disputes between creditors. Here, where the

Debtor is attempting to collect funds, the argument for jurisdiction is even greater.

### III. CONCLUSION

The Complaint "relates to" Debtor's bankruptcy estate in that its outcome affects distribution under the Plan. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1334. This Court declines to abstain from adjudicating the Complaint.