In the Matter of **FEDERATED DEPART-MENT STORES, INC.,** Allied Stores Corporation, et al., Debtors.

**Bankruptcy No. 1–90–00130.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 20, 1992.

David Epstein, Boston, Mass., Bernard Nash, Edward Modell, Dickstein, Shapiro & Morin, Washington, D.C., for petitioner.

Kim Lewis, Frost & Jacobs, Cincinnati, Ohio, Mary Ann Gall, Jones, Day, Reavis & Pogue, Columbus, Ohio, for respondent.

ORDER RE: DEBTORS' MOTION FOR ORDER ENFORCING CONFIRMATION ORDER INJUNCTION

J. VINCENT AUG Jr., Bankruptcy Judge.

This matter came before the Court on the Reorganized Debtors' Motion For Order Enforcing Confirmation Order Injunction and Directing The Equitable Life Assurance Society ("Equitable") to Show Cause Why It Should Not Be Held In Civil Contempt For Knowing And Willful Violation Thereof (Doc. 8899), Equitable's Brief In Response (Doc. 8980) and the Reorganized Debtors' Reply (Doc. 8993). At the June 9, 1992 hearing, this Court found that Equitable was not in civil contempt. The issue remaining is whether or not this Court should direct Equitable to dismiss the Florida lawsuit.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

After consideration of the pleadings and oral argument of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Equitable is the lessor under a ground lease on the former Jordan Marsh store at Dadeland Mall ("Dadeland Lease") which lease was guaranteed by Allied Stores Corporation. In 1988, Allied Stores General Real Estate Company ("ASGREC") entered into an agreement with Maas, Inc. to sublease the store ("Sublease") (the Dadeland Lease and Sublease are collectively referred to herein as the "Dadeland Leases"). On June 1, 1990, approximately six months after the filing of the Chapter 11 proceedings and pursuant to an order of this Court, ASGREC assumed the Dadeland Lease and all obligations thereunder (Doc. 1131). At that time, Equitable paid the Debtors $700,000 in consideration for the assumption.

On April 11, 1991, this Court entered its Order Authorizing Debtors to Implement Certain Strategies ("Florida Strategy Or-

der") (Doc. 4135) whereby special procedures were approved to dispose of certain Florida leaseholds including the Dadeland Leases. The Florida Strategy Order contemplated that the Jordan Marsh store, among others would be closed, consolidated and assigned. Consequently, on July 2, 1991, the Debtors filed a motion for authority to assign the Dadeland Lease to Mervyn's ("Motion to Assign") (Doc. 4960). On or about September 24, 1991, while the Motion to Assign was under submission with this Court, the Debtors closed the Jordan Marsh store at Dadeland. On December 3, 1991, this Court entered its Opinion and Order whereby the Motion to Assign was denied ("Order Denying Assignment") (Doc. 6840).

The Debtors' Third Amended Joint Plan of Reorganization ("Plan") was confirmed by order of this Court on January 10, 1992 ("Confirmation Order"). Pursuant to the Plan, the Dadeland Leases were shown as assumed leases although the Debtors reserved the right to reject the Dadeland Leases through the effective date of the Plan on February 4, 1992. Also, under the Plan the Debtors reserved the right to assign the Dadeland Leases for another 90 days after the effective date of the Plan or until May 4, 1992.

On January 23, 1992, Equitable filed its Motion to Compel Assignment of the Dadeland Leases or in the Alternative, to Allow Equitable to Enforce its Rights Under the Dadeland Lease ("Motion to Compel") (Doc. 7682) which requested that the Court order that the Dadeland Lease be put up for auction during the above-referenced 90 day period or that Equitable be able to seek immediate relief in a Florida court during the said period.

February 4, 1992 passed and the Debtors did not reject the Dadeland Leases. On February 10, 1992 Debtors filed their Objection to the Motion to Compel stating that they intended to withdraw the Dadeland Leases from the market and intended to keep the store closed indefinitely based on an alleged absence of operating requirements in the Dadeland Lease (Doc. 7929).

On March 6, 1992, in response to a deadline in the Confirmation Order setting a bar date for administrative claims, Equitable filed its Proof of Claim to Extent Required by Bar Order and Reservation of Rights for Administrative Expense Treatment with Respect to Dadeland Lease and Other Agreements at Dadeland Shopping Center Pursuant to Section 503 ("Limited Proof of Claim").

The 90 day period expired on May 4, 1992 and the Debtors did not assign the Dadeland Leases. Accordingly, on May 6, 1992, Equitable withdrew its Motion to Compel, which had become moot, and commenced its declaratory judgment action in Florida state court ("Florida Action"). In the Florida Action, Equitable seeks a declaration of the respective rights of the parties under the Dadeland Leases based upon Equitable's allegation that operating covenants exist and remain in full force and effect and that the Debtors' closure of the store violates said covenants. The Florida Action was filed pursuant to chapter 86 of the Florida Statutes governing declaratory judgments and involves issues of Florida state contract and real property law. The Dadeland Lease expressly states that it is to be construed and governed in accordance with Florida law.

## CONCLUSIONS OF LAW

■ Debtors argue that Equitable's filing of the Florida Action violates the Confirmation Order and the injunction therein. Debtors argue that the Confirmation Order requires that all preconfirmation claims, including administrative claims, are to be determined solely by this Court.

Debtors point to the following pertinent language in the Plan and Confirmation Order:

> As of the Confirmation date, except as otherwise provided in the Plan or this Confirmation Order, all non-Debtor entities and individuals shall be, and hereby are, permanently enjoined and precluded from asserting against the Debtors, the Reorganized Debtors, their respective successors or their respective property, any other or further Claims, debts,

**1000**

rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to this entry of this Confirmation Order.

Confirmation Order § III.G.2.a, at 90.

... [R]equests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than 30 days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Claims and that do not File and serve a request by the application bar date shall be forever barred from asserting such claims against the Debtors, the Reorganized Debtors or their respective property.

Plan § III.A.1.g.i, at 27.

Debtors conclude that Equitable's claim is a preconfirmation claim because, one, the entire claim flows from the September 24, 1991 preconfirmation closing of the store, and, two, Equitable's filing of its Limited Proof of Claim was tantamount to an acknowledgement that Equitable held an administrative claim. The Debtors assumptions are incorrect.

This Court is not persuaded by the Debtors' argument that Equitable's claim all flowed from the preconfirmation closing of the store. First, it is possible, moreover even likely, that the store was closed initially for one reason, such as the hope that the Debtor would be selling the store to Mervyn's, yet the store may have remained closed for a host of different reasons, such as generally poor market conditions.[1] Second, certain deadlines for the Debtor expired while the store was closed, thereby changing the position of the parties with respect to the closure. In addition, at the hearing on June 9, 1992, the Debtors brought to light their new intention to open the store as an extension of their other already existing store at the mall. This is clearly a post-confirmation development

and an issue that will need to be addressed in a post-confirmation posture.

■ We also give little weight to the Debtors argument that Equitable's Limited Proof of Claim was an admission by Equitable that it had an administrative claim which must be heard by this Court. Due to the far reaching language of the Debtors' Plan, Equitable had no choice but to file something by the March 6, 1992 deadline or possibly lose the claim. In fact, Equitable took extreme pains and used its best "legalese" to file a very limited and protective document which it termed a modest Reservation of Rights.

Like the Debtor, we begin our analysis with a look at the Plan, but unlike the Debtor, we focus our analysis on some different language.

Executory contracts and unexpired leases entered into and other obligations incurred after the Petition Date by any Debtor shall be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such executory contracts, unexpired leases and other obligations shall survive and remain unaffected by entry of the Confirmation Order.

Plan § V.F., at 53.

Clearly, by the Debtors' own language, the Plan contained a carve-out provision regarding assumed leases, such as the Dadeland Leases, which would not be affected by the Confirmation Order. This carve-out provision encourages parties to deal with the Reorganized Debtor and must be upheld.

When leases are assumed, relationships begin anew between the parties, their benefits and burdens alike. This is especially true in this case where the Debtor assumed the Dadeland Leases *post petition*, had a second bite of the apple and chance to reject the Dadeland Leases *post confirmation*, and a third bite of the apple and chance to assign the Dadeland Leases *post effective date* of the Plan. After all these chances to work the problem out in this

---

**1.** In their February 10, 1992 Objection to Motion to Compel, the Debtors state that they are convinced that "market conditions do not presently favor the realization of maximum returns

for the Dadeland store." Debtors also state they are "exploring other possible uses of the property."

Court, the Debtor must now face the music in another forum.

In their February 10, 1992 Objection to Motion to Compel even the *Debtors* admit to the importance of the fact that the Dadeland Lease was assumed: "Well over eighteen months ago, with this Court's approval, Debtors assumed the Dadeland Lease. Equitable's post confirmation rights thus are governed exclusively by the terms of the lease itself." Motion to Compel at p. 9.

We also focus our attention on the 90 day period following the effective date of the Plan which was created by the Debtors in the Plan. This additional period gave the Debtors the post confirmation flexibility to assign the Dadeland Leases for a certain period of time. It goes without saying that the expiration of the Debtor-created period of time had to stand for something. It was only at the end of this 90 day period that Equitable knew that the Dadeland Leases were not going to be assigned. We find that at the expiration of the 90 day period, Equitable then had the right to pursue its claim against the Debtor regarding the alleged breach of the operating covenant in the assumed Dadeland Leases.

Pursuant to 28 U.S.C. § 1334(c)(1), this Court may exercise discretionary abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law ..."

The Bankruptcy Court in *In re Republic Readers' Service, Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987) set forth an exhaustive use of factors to be considered in deciding whether to abstain:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of my docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

As pointed out by Equitable, this dispute involves a Florida lease, Florida real estate, Florida law—in sum, it's a Florida fight. Further, from a reading of Equitable's lengthy complaint, the dispute also looks very much like a landlord-tenant dispute and not much like a claims dispute. We find that most, if not all, of the factors set forth in the *Republic* decision apply and point toward discretionary abstention on the issue before us.

Accordingly, we hereby abstain from the determination of the liquidation of this claim, which claim is best decided by and already poised in State court. Once the claim has been liquidated, the administrative claim process may resume in this Court.

Accordingly, the Reorganized Debtors' Motion For Order Enforcing Confirmation Order Injunction is hereby DENIED.

IT IS SO ORDERED.