**In re FEDERATED DEPARTMENT STORES, INC., Debtor.**

**Federated Department Stores, Inc. and Bloomingdale's Real Estate, Inc., Plaintiffs,**

**v.**

**White Flint Limited Partnership, Defendant.**

**Bankruptcy No. 1–90–00130. Adversary No. 94–1025.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Feb. 8, 1999.

## MEMORANDUM DECISION REGARDING ASSUMED LEASE

JEFFERY P. HOPKINS, Bankruptcy Judge.

There are two essential questions needing resolution on the motion to dismiss the adversary complaint filed in this proceeding: (1) whether this court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1334(b) and 157(a), in a suit to recover alleged pre-confirmation overpayments arising in a post-confirmation dispute between the debtor-tenant, Federated Department Stores, Inc. (Federated) and, the creditor-landlord, White Flint Limited Partnership (White Flint), in connection with a lease and related operating agreement assumed under the confirmed Plan and (2) whether the court should voluntari-ly abstain from hearing this case, pursuant to 28 U.S.C. § 1334(c). Because we find that this court has subject matter jurisdiction over this dispute and that abstention is not warranted, we overrule the motion to dismiss. Defendant, White Flint shall have 10 days from service of this entry within which to respond to the adversary complaint.

### Motions to Dismiss

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1) as incorporated in Bankruptcy Rule 7012(b). The Sixth Circuit has parsed the Rule:

Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a *factual* attack, ..., no presumptive truthfulness applies to the factual allegations. Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.

*Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320 (6th Cir.1990) (emphasis in original; citations omitted). There are no serious factual disputes raised by the motion to dismiss, thus the standard for a facial attack on subject matter jurisdiction applies. With this in mind we examine the

complaint, taking the allegations averred therein as true to resolve the jurisdictional question presented.

### Facts

The uncontroverted facts in this case are as follows: Federated, one of the largest retailers in the United States based in Cincinnati, Ohio, operates a Bloomingdale's department store in the White Flint Shopping Mall in Montgomery County, Maryland. Contemporaneously with a lease, Federated also executed an instrument entitled, Construction Operation and Reciprocal Easement Agreement (REA), obligating it to pay common area maintenance fees (CAM Fees) to White Flint over the term of the lease calculated upon certain indices specified in that agreement. In January 1990, Federated filed for protection under chapter 11 of the Bankruptcy Code and on January 10, 1992, the bankruptcy court confirmed the debtors' Third Amended Joint Plan of Reorganization (Plan). No final decree has been entered in the main Federated case, thus it remains open.

Prior to confirmation, in December 1991, the court authorized Federated to issue creditors asserting default claims under § 365 a Notice of Executory Contracts and Unexpired Leases to be Assumed, or Assumed and Assigned, Under the Plan of Reorganization and Amount of Proposed Cure Payment and Opportunity to Object Thereto (Notice). This procedure was approved on October 28, 1991, in the disclosure statement order (Main Case Doc. 6247), and there is no dispute that White Flint received Federated's Assumption Notice containing the sums to be paid to cure defaults. *See* Application for an Order Compelling Debtors to Comply with Provisions of Assumed Real Property Leases, p. 8 (Application) (Main Case Doc. 9898). The Notice barred and enjoined White Flint and all other landlords from asserting any claims based on defaults under the leases and executory contracts proposed to be assumed unless an objection to the Notice was filed by December 20, 1991. In connection with the assumption of the lease and REA in its chapter 11 Plan, Federated proposed to pay White Flint $240,743.35 to cure all defaults, as required by § 365 of the Bankruptcy Code. White Flint did not object to the accuracy of the proposed cure amounts by the deadline imposed by this court, and, pursuant to the Plan, in early 1992, Federated paid $240,743.35 to White Flint to cure those defaults. The Plan discusses payments related to the assumption of executory contracts and unexpired leases, and deals with amounts related to cure, adequate assurance, and other payments. *See* Plan, p. 50. The discharge clause in the Plan provides for the discharge of debts "that occurred prior to the Confirmation Date (January 10, 1992)." *See* Plan, p. 66.

In November 1992, less than one year after confirmation, White Flint contacted Federated by letter seeking additional default payments of $214,700.78 related allegedly to the assumed lease. White Flint asserted this amount was due on account of an increase in real estate taxes assessed in March 1991 against the mall property by Montgomery County.[1] The total

---

1. During the 1988–89 tax year, Montgomery County increased the real estate tax valuation for the White Flint Shopping Mall above the 1987–88 assessment. In March 1991, Montgomery County billed White Flint for the additional real estate taxes and in May 1991, White Flint paid those taxes. Apparently, White Flint also continued to pursue an administrative and judicial appeal of the County's increased valuation and assessment through the Supervisor of Assessments for the State of Maryland, the Montgomery County Property Tax Assessment Appeal Board and in the state court of appeals. According to Federated's Complaint, this action was taken without the knowledge or consent of Federated or any of the other mall tenants as the custom had developed over the years between these parties despite provisions in the lease requiring otherwise. White Flint asserts that Federated did have knowledge (either constructive or actual) of its actions. However, this conflict goes to the merits of the parties' dispute and does not affect this jurisdictional

amount of additional real estate taxes claimed by White Flint in the letter to Federated breaks down as follows:

| Tax Year | Additional Amount |
|----------|-------------------|
| 1988–89 | $17,792.56 |
| 1989–90 | 48,868.58 |
| 1990–91 | 89,284.86 |
| 1991–92 | 58,754.78 |

*See* Adversary Complaint and Response to Application for Order Compelling Debtors to Comply with Assumed Lease, p. 11 (Complaint) (Adv.Doc. 1).

In a series of letters dated between February 28, 1991, and March 18, 1993, White Flint and Federated engaged in further discussions regarding unpaid pre-confirmation CAM Fees. *See* Application, pp. 11–12; Complaint, pp. 13–14. White Flint asserts it is owed additional unpaid 1990 CAM Fees allegedly incurred pursuant to the REA.

Unable to resolve its differences with Federated over these charges in the negotiations, on December 23, 1993, White Flint filed an Application with this court. The Application sought payment for the additional cure claims in the amount of $214,700.78 allegedly due under the lease for real estate taxes and $60,275.00 allegedly due under the REA for CAM Fees.

*See* Application, p. 13. Federated responded by filing an adversary complaint against White Flint seeking both declaratory relief and monetary damages for alleged breaches and overpayments of real estate taxes[2] and CAM Fees in connection with the same lease and REA assumed under the confirmed Plan.[3]

### Jurisdictional Arguments

Federated contends that the terms of the confirmed Plan and confirmation order confers subject matter jurisdiction upon this court. Federated argues that the dispute in this proceeding directly affects estate property—namely the alleged overpayment of pre-confirmation real estate taxes and pre-confirmation CAM Fees which were erroneously determined and paid post-confirmation by the debtor pursuant to § 365. *See* Plan, p. 67. Federated further contends that the claims for affirmative relief are recoverable in an adversary proceeding brought pursuant to the court's jurisdiction under 28 U.S.C. § 1334, to determine matters "related to" the confirmed chapter 11 Plan. *See* Complaint, pp. 3–4. Upon receipt of Federated's Complaint, White Flint, relying on the provisions of 11 U.S.C. § 1142, reversed its position[4] and sought to characterize

---

issue. The new valuation imposed against the mall by Montgomery County impacted pre-confirmation real estate taxes due for the 1988–89, 1989–90 and 1990–91 tax years. While contesting the 1988–89 real estate tax increase, White Flint apparently continued to bill mall tenants, including Federated, based on the 1987–88 valuation, ignoring Federated's chapter 11 filing and the Notice procedure established by the court for curing defaults under the disclosure statement order.

2. While some of the alleged overpayments were pre-petition and pre-confirmation, others were post-petition but pre-confirmation. For the sake of clarity in this Decision, we shall refer to all overpayments as pre-confirmation.

3. Federated's Complaint seeks the following relief: (i) a declaratory judgment that the debtors are not obligated to pay the additional tax liability, as such amount was not included in the proposed cure amount asserted by Federated in the Notice and White Flint did not

object to the proposed cure amount; (ii) a declaratory judgment that Federated is not obligated to pay any portion of the 1990 CAM charges; (iii) an order directing the repayment of the allegedly erroneously paid 1990 CAM charges in an unspecified amount; (iv) an order directing the repayment of the allegedly misallocated taxes for tax years 1988–89, 1989–90 and 1990–91, in the claimed amount of $524,079; (v) a finding that White Flint breached the lease pre-petition by failing to obtain separate assessment of Bloomingdale's parcel, with damages in an unspecified amount; (vi) a finding that White Flint breached the lease pre-petition with respect to alleged obligations concerning White Flint's appeal of the tax assessment; (vii) the dismissal and denial of White Flint's Application; and (viii) an award of interest and costs to Federated. *See* Complaint, pp. 29–31.

4. Keep in mind White Flint first invoked the jurisdiction of the court pursuant to The Application to enforce the lease and REA and for

this dispute as a post-confirmation default under the lease and REA over which the court does not have subject matter jurisdiction.[5]

## I

The assertion by the parties that subject matter jurisdiction over this dispute derives from either the language of the Plan, the confirmation order or from 11 U.S.C. § 1142 of the Bankruptcy Code is incorrect. A leading treatise on bankruptcy states the applicable rule succinctly:

Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334; this is so whether the matter at issue arises before or after confirmation of a plan. Confirmation does not alter the basic jurisdictional analysis applicable to bankruptcy courts. When a bankruptcy court is asked to consider a plan-related matter after confirmation, the court must, as a threshold matter, determine whether it has jurisdiction under 28 U.S.C. § 1334. To the extent jurisdiction exists, the court ought then to consider whether abstention is appropriate and whether the resolution of the matter at issue is better left to a court other than the bankruptcy court that administered the Chapter 11 case.

8 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY ¶ 1142.04[2] (15th ed. rev. 1998) (footnotes omitted). *See also Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."); GEORGE H. TREISTER, ET AL., FUNDAMENTALS OF BANKRUPTCY LAW § 201(c)(2)(A) (4th ed. 1996) ("The bankruptcy jurisdictional grant is a pervasive one, and even when it is nonexclusive, it is generally paramount to the jurisdiction of any competing court."); 4 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 95:7 (1997) ("The specific examples cited in the section [1142] itself are very limited, and under the principle of ejus generis, a strong argument can be made that it is aimed solely at the initial effectuation of the plan and not at any activities thereafter.")

As noted, disputes arising post-confirmation must be analyzed under 28 U.S.C. § 1334 in order to determine whether the

recovery of monetary relief against Federated stating therein that: "[t]he Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157 ..." and that, "[t]his is a 'core proceeding', [sic as to comma placement] which the Court is empowered to decide. 28 U.S.C. § 157(b)(1) and (2)(A), (L), and (O)." *See* Application, p. 3. Federal Rule of Civil Procedure 8, applicable to bankruptcy proceedings through Bankruptcy Rule 7008, provides that a party seeking recovery of monetary damages against an adverse party need only make "a short and plain statement of the claim ... and demand for judgment" in order to institute suit in federal court. Treating White Flint's Application as a complaint under this rule, as we must, means that Federated's adversary Complaint and response constitutes a counterclaim pursuant to Bankruptcy Rule 7013 and Federal Rule of Civil Procedure 13. Though no notice has been filed, it would appear that White Flint seeks now to voluntarily dismiss the Application, which it may not do over Federated's objection "unless the counterclaim can re-

main pending for independent adjudication by the court." *See* Fed.R.Civ.P. 41(a)(2) and (c). Because we conclude that the counterclaim can stand on its own, White Flint is permitted to file a notice dismissing its Application and the court will treat Federated as plaintiff for purposes of deciding this motion.

5. 11 U.S.C. § 1142 reads as follows:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

court has subject matter jurisdiction. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.),* 930 F.2d 1132 (6th Cir.1991); *Refrigerant Reclamation Corp. of Am. v. Todack (In re Refrigerant Reclamation Corp. of Am.),* 186 B.R. 78 (Bankr. M.D.Tenn.1995). Similar to the proceedings in *In re Refrigerant,* the issue in our case concerns whether the adversary complaint filed by Federated falls within the ambit of 28 U.S.C. § 1334(b)'s expansive grant to district courts of concurrent and original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." By reason of the general order of reference entered by the District Court for the Southern District of Ohio, pursuant to 28 U.S.C. § 157(a), the district court has referred all such matters to this court. *See In re Eagle–Picher Indus., Inc.,* 215 B.R. 983 (Bankr.S.D.Ohio 1997).

The test for determining subject matter jurisdiction over civil proceedings related to bankruptcy cases has been precisely stated by the Sixth Circuit:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. *See In re Wood,* 825 F.2d at 93. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. *Id.*
> In *Robinson,* 918 F.2d at 583, we noted that the circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b)

and its substantially identical predecessor under the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471(b). As the Third Circuit held:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Wolverine Radio Co., Inc.,* 930 F.2d at 1141–42 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original; citations omitted)).[6] The Sixth Circuit, however, also cautioned in *Wolverine* that the jurisdictional grant is not limitless:

> We "have accepted the *Pacor* articulation, albeit with the caveat that 'situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.' " *Robinson,* 918 F.2d at 584 (quoting *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986)); *accord In re Turner,* 724 F.2d 338, 341 (2d Cir.1983).

*Id.* at 1142. The burden of proving the existence of subject matter jurisdiction under § 1334(b) falls to Federated who, as plaintiff in the adversary proceeding, seeks redress of the dispute concerning the overpayment of real estate taxes and CAM Fees under the lease and REA in this court. "Plaintiffs have the burden of prov-

---

**6.** "The Supreme Court effectively has overruled *Pacor* with respect to the holding in *Pacor* that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) is not applicable in a bankruptcy case. *See Things Remembered Inc. v. Petrarca,* [516 U.S. 124]

116 S.Ct. 494, 133 L.Ed.2d 461 (1995). *Things Remembered,* however, does not disturb the authority of *Pacor* on the point for which we cite it." *Donaldson v. Bernstein,* 104 F.3d 547, 554 n. 1 (3d Cir.1997).

ing jurisdiction in order to survive a Rule 12(b)(1) motion and factual disputes may be resolved by the court when adjudicating such a motion." *Weaver v. University of Cincinnati,* 758 F.Supp. 446 (S.D.Ohio 1991) (citations omitted).

■ Application of the *Wolverine* standards to the facts in this case leads us to the definite conclusion that Federated has satisfied its burden of demonstrating that this court has subject matter jurisdiction over this dispute.[7]

First, this proceeding, though characterized as a post-confirmation dispute, is in reality a core proceeding under 28 U.S.C. § 157(b). *See Caldor Corp. v. S Plaza Assocs., L.P. (In re Caldor, Inc.–NY),* 217 B.R. 121, 127 (Bankr.S.D.N.Y.1998). Similar to *Caldor,* this case, in substance, boils down to a claim by a creditor for pre-confirmation § 365 default payments[8] and a counterclaim for alleged overpayments made by the estate in connection with the lease and executory contract assumed under the confirmed Plan. The only distinction between *Caldor* and the present case is that the dispute there arose and was adjudicated prior to plan confirmation.

We believe that the facts in this case and those in *Caldor* present a distinction without a difference. The dispute in connection with the alleged rental overpayments in both cases concerns pre-confirmation § 365 default amounts, and in both cases the underlying facts of the dispute are grounded in transactions occurring before confirmation. The mere fact that the *Caldor* plaintiffs brought their action prior to obtaining confirmation of a plan does not change the character of the dispute or the nature of the proceeding. Under normal circumstances this matter would consist of an assertion of a claim for default payments due pursuant to § 365 and an objection by the debtor, which when coupled with a request for affirmative relief by the debtor converts the matter into an adversary proceeding, a subject well within the province of a bankruptcy court's jurisdiction. *See* Fed.R.Bankr.P. 3007 (if an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding); Fed.R.Bankr.P. 7001 (an adversary proceeding is a proceeding to recover money or property, or to determine the dischargeability of a debt, or to obtain a declaratory judgment, or to obtain an injunction or other equitable relief, among other forms of relief).

There can be no doubt that the outcome of a proceeding to determine the value of a § 365 default claim will impact directly upon "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Whether that impact is positive or negative is of no moment under the standard laid down by *Wolverine. In re Wolverine Radio Co., Inc.,* 930 F.2d at 1141–42. Furthermore, the parties embroiled in this dispute are even more intertwined than those in *Wolverine* thus, "[§ 1334(b)] does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding." *In re Wolverine Radio Co., Inc.,* 930 F.2d at 1143 (quoting

---

7. At the outset we find it comforting to note that the *Wolverine* doctrine, as we shall refer to it, has been accepted in the majority of circuits including the Fourth Circuit, where White Flint resides. Thus, the standards being applied here are no different from what White Flint could expect were its motion to dismiss for lack of subject matter jurisdiction being heard in its home jurisdiction. *See Official Dalkon Shield Claimants' Comm. v. Mabey (In re A.H. Robins Co., Inc.),* 880 F.2d 769 (4th Cir.1989); 8 Collier on Bankruptcy ¶ 1142.04[2].

8. In general, § 365 provides that if there has been a default in an executory contract or unexpired nonresidential lease it may not be assumed by the debtor, unless the debtor cures the default or provides adequate assurance that it will *promptly* cure the default, compensates, or provides adequate assurance that it will compensate, a party other than the debtor to the contract or lease, for any actual pecuniary loss to such party resulting from the default, and provides adequate assurance of future performance.

*Kelley v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626, 635 (6th Cir.1986)).

This court has an overriding concern to finish the adjudication of claims arising out of the administration of the estate under title 11. *See* 28 U.S.C. § 157(b)(2)(A) and (B) (allowance and disallowance of claims are a core proceeding, with the one notable exception being the liquidation of personal injury and wrongful death actions against the estate); *see also* 28 U.S.C. § 157(b)(2)(C) (counterclaims by the estate against persons filing claims against the estate are core proceedings). There is no dispute White Flint obtained creditor status in conjunction with other landlords and executory contract claim holders and that each of these creditors had a full and fair opportunity to object to the proposed default amounts offered under § 365, and that, White Flint like the other creditors, in fact had its default claims paid through the confirmed Plan.[9] This factor alone is a compelling reason for concluding that the court should exercise subject matter jurisdiction in this case. *See In re Wolverine Co., Inc.,* 930 F.2d at 1143.

Conceivably, also, the administration of the estate may be adversely affected by an unraveling of the § 365 claims adjudication procedure approved in the disclosure statement order. Potentially, multiple suits could ensue in federal and state courts throughout the United States over pre-confirmation rental payments allegedly due disgruntled creditors whose contracts or leases were assumed under the confirmed Plan. Moreover, a reorganized and far more litigious Federated may also want to enter the fray as evidenced in this case. Lured by the potential for recovering thousands of dollars of alleged rental overpayments, Federated might well begin filing suits against landlords who submitted to the § 365 claims procedure, forcing these entities to incur significant legal expenses along with the attendant risks of

having a substantial monetary judgment entered against them. These suits if instituted could seriously undermine the chapter 11 Plan confirmed in this case. The results obtained in these suits could also have a res judicata or collateral estoppel effect on any further proceedings brought in this court.

Based on the foregoing, we hold that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) over this dispute arising out of the debtor's assumption of the White Flint lease and REA under the confirmed Plan.

## II

Having determined that the court may exercise subject matter jurisdiction in this case, we next must consider whether voluntary abstention is warranted.

In essence, the claims being asserted by both parties in this proceeding require a court (whether it be this court or Maryland state court) to make a redetermination of the pre-confirmation amounts due from Federated to White Flint which formed the basis of the decision to permit Federated's assumption of the lease and REA in the first place. Therefore, this case involves an interpretation of whether White Flint and Federated are bound by prior proceedings in this court setting forth the cure amount, which Federated first calculated and which White Flint failed to file an objection to or to question in any of the proceedings before now. There is no court better able to make that determination than the one in which the original proceedings took place, in which the original Notice to be interpreted was issued, and which is familiar with the intricacies of federal bankruptcy law. This court will not lightly refrain from exercising its jurisdiction to hear and decide a matter of this importance to a bankruptcy case properly brought before it.

---

9. With the exception of White Flint, all claims for lease cure amounts have been paid or otherwise resolved.

White Flint argues strenuously for abstention claiming that "ascertainment of the exact amount of real estate taxes and CAM charges due and a judgment compelling their payment are tasks that are best left to Maryland state court." Memorandum in Support of Motion of White Flint Limited Partnership to Dismiss Complaint for Lack of Subject Matter Jurisdiction, or in the Alternative, to Abstain From Adjudicating Complaint, pp. 2–3. White Flint further contends that resolution of this dispute would needlessly involve this court in interpretations of complex Maryland real estate tax and landlord tenant laws of first impression to which it would be entitled to a jury trial.

In the alternative, White Flint promises to waive any statute of limitation defenses it may assert if this court were to voluntarily abstain from hearing this case in favor of allowing Federated to re-file its Complaint in Maryland state court for a determination of Federated's portion of the tax liability and CAM Fees allegedly overpaid pursuant to the lease and REA, citing *Pennsylvania Cos., Inc. v. Stone (In re Greenley Energy Holdings of Pa., Inc.)*, 110 B.R. 173 (Bankr.E.D.Pa.1990); *Matter of Federated Dep't Stores, Inc.*, 144 B.R. 998 (Bankr.S.D.Ohio 1992) and *Fin. Gen. Bankshares, Inc. v. Metzger (In re Fin. Gen. Bankshares, Inc.)*, 680 F.2d 768 (C.A.D.C.1982) (as a condition for dismissal of the pendent claims, attorney was required to file in District of Columbia Superior Court a record waiver of any applicable statute of limitations and waiver of evidentiary objections to evidence admitted by the district court).

Expectedly, Federated argues that this court should retain jurisdiction over the entire dispute including its claims for monetary relief stemming from the alleged overpayments and breach of contract claims. Federated opposes abstention contending that the cases cited by White Flint are inapposite to the case at bar. The debtor argues that there are no parallel state court proceedings pending and that the estate would be unfairly prejudiced if it is prohibited from offsetting the overpayments allegedly due under the lease and REA against White Flint's claims for additional rent and CAM Fees by having to re-file an action in Maryland state court.

Permissive abstention is governed under 28 U.S.C. § 1334(c)(1) which provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Judge Lundin also provides an excellent discussion concerning the permissive abstention doctrine in *In re Refrigerant.* We quote extensively from that case because of the thorough analysis:

> Section 1334(c)(1) acts as a brake on the broad jurisdiction conferred by 28 U.S.C. § 1334(b)(1). Section 1334(c)(1) "is sufficient to keep federal jurisdiction from becoming over extended." *Salem Mortgage Co. v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 635 (6th Cir.1986). As the Sixth Circuit explained in *Salem Mortgage:*

> > Congress wisely chose a broad jurisdictional grant and a broad abstention doctrine over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases.

> *Id.* (citing Note, *Selective Exercise of Jurisdiction in Bankruptcy–Related Civil Proceedings*, 59 Tex.L.Rev. 325, 334–36 (1981)).

> However, concern with over extension of bankruptcy jurisdiction is itself leavened by the general rule that: "Abstention 'is the exception to the rule that federal courts should hear and decide matters properly before them.'" *West Coast Video Enters., Inc. v. Owens (In*

*re West Coast Video Enters., Inc.),* 145 B.R. 484, 488 (Bankr.E.D.Pa.1992) (quoting *Ronix Corp. v. Philadelphia,* 82 B.R. 19, 20 (E.D.Pa.1988)). *See also Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992) ("Abstention should rarely be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"). As stated by one court, abstention "is therefore typically reserved for matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented, [citation omitted]; the proceeding has been removed from state court and/or there is a parallel state court action pending, [citation omitted]; the proceeding involves principally claims asserted by or against nondebtors [citation omitted], or some other truly extraordinary aspect is present. [citation omitted.]" *In re West Coast Video Enters., Inc.,* 145 B.R. at 488. Factors relevant to the abstention inquiry include:

'(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforce-

ment left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.'

*In re Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993) (quoting *In re Eastport Assoc.,* 935 F.2d at 1075–76 (quoting *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1167 (9th Cir.1990)) (footnote omitted)).

*In re Refrigerant,* 186 B.R. at 83–84.

■ Applying the *Refrigerant* principles illuminated in Judge Lundin's carefully crafted opinion to these proceedings, we decline the invitation to voluntarily abstain in this case. For purposes of discussion we have combined some of the abstention factors together and are considering them in the order deemed relevant.

### Substance of the asserted 'core' proceeding

■ This action represents an ongoing dispute between the debtor and a creditor of this estate over a pre-petition claim arising under § 365; the presence of "nondebtor" parties is not a factor. Furthermore, for reasons already addressed we find this to be a core proceeding under 28 U.S.C. § 157(b). *See In re Caldor Inc.— N.Y.,* 217 B.R. at 127. The mere fact that the resolution of a dispute may be affected by state law does not alone render the dispute non-core.[10] The relevant inquiry here "is whether the nature of the adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." *In re Caldor, Inc.—NY,* 217 B.R. at 127 (quoting

---

**10.** 28 U.S.C. § 157(b)(3) provides:

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is other-

wise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

*Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.)*, 896 F.2d 1384, 1389 (2d Cir. 1990)). White Flint raised no objection to the assumption of its lease and REA under the confirmed Plan nor to the accuracy of the default amounts that had been proposed and for which it was ultimately paid. In sum, White Flint subjected itself to the core jurisdiction of this court. *In re Caldor, Inc.—N.Y.*, 217 B.R. at 128 (citing *Union Turnpike v. Howard Beach Fitness Ctr., Inc.*, 209 B.R. 307, 311 (S.D.N.Y. 1997); *In re Leslie Fay Cos., Inc.*, 181 B.R. 156, 159 (Bankr.S.D.N.Y.1995); *Lesser v. Gray*, 236 U.S. 70, 74, 35 S.Ct. 227, 59 L.Ed. 471 (1915)).

We also find that this is a core proceeding pursuant to § 157(b)(2)(C) because, as we have concluded, Federated's claims against White Flint are the equivalent of counterclaims against an entity that has filed a claim against the estate. *In re Caldor, Inc.—N.Y.*, 217 B.R. at 128 (citing *In re Springer–Penguin, Inc.*, 74 B.R. 879, 882 (Bankr.S.D.N.Y.1987)); *accord Lombard–Wall, Inc. v. N.Y.C. Hous. Dev. Corp. (In re Lombard–Wall, Inc.)*, 48 B.R. 986, 990 (S.D.N.Y.1985). "The policy of § 157(b)(2)(C) is that, by filing a proof of claim or commencing an action in the bankruptcy court, the creditor is deemed to consent to or submit to final disposition of all issues by the bankruptcy judge, including disposition of any claim that the estate may have against the creditor." FUNDAMENTALS OF BANKRUPTCY LAW § 2.01(d)(2)(A).

As earlier noted, White Flint initially argued in its Application that subject matter jurisdiction over this dispute was not only proper in this court pursuant to 28 U.S.C. § 1334, but also that this matter was a core proceeding pursuant to 28 U.S.C. § 157(b) (*See* footnote 4). White Flint reversed its position only when confronted with an adversary Complaint filed by Federated that seeks monetary relief which exceeds the rental payments and CAM Fees White Flint is allegedly owed.

This contradiction belies a fatal flaw in White Flint's argument. It also diminishes the likelihood that the reason these proceedings were commenced in bankruptcy court in any way involves forum shopping by either of the parties.

Having considered in detail the parties' arguments raised at the hearing and in the memoranda and having expressed our belief that this proceeding concerns core issues, suffice it to say that this court is convinced of its subject matter jurisdiction over this dispute under 28 U.S.C. § 1334(b).

### Dominance of state law issues over bankruptcy issues

We do not believe that the state law issues predominate over bankruptcy issues in this proceeding, or that the issues are so difficult or unsettled in nature concerning the applicable state law that this court should abstain. As noted above, what this dispute boils down to is an interpretation of the binding nature of prior proceedings in this court and whether the cure amount set forth in the Notice may be adjudicated anew based on the current arguments raised by the parties. Once that issue is resolved and only if the court decides that one or both of the parties is not bound by the amount set forth in the Notice, then the court will be faced with the task of having to interpret the provisions of the lease and REA to determine the appropriate adjustment that must be made, if any, to the cure amount. In making that determination, the court is cognizant that Maryland law is no different from the majority view when it comes to interpreting contracts:

[T]he objective theory of contracts is applied in Maryland and limits the court to the "four corners" of the contract in determining the intention of the parties. [Tenant] relies upon our cases, including *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A.2d 687 (1958), which held that "the written language embodying the terms of an agreement will govern the rights and liabilities of the par-

ties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding or unless there is fraud, duress, or mutual mistake."

*Cloverland Farms Dairy, Inc. v. Fry*, 322 Md. 367, 587 A.2d 527, 529–30 (1991).

The parties concede that the Maryland state court litigation regarding the real estate taxes which were due has ended and a final determination has been rendered by a court of competent jurisdiction to which no further appeal can be pursued. Therefore, all that remains in this dispute concerning the alleged defaults or overpayments is a straight interpretation of the lease and REA for determining the portion of the real estate taxes and CAM Fees allocable to Federated for its Bloomingdale's store based on the calculations and indices expressed in those agreements. These are the same issues that would have been litigated if White Flint had timely objected to Federated's Notice of the cure amount it was proposing to pay to assume the lease and REA. Neither is there at present a related proceeding commenced in state court or other nonbankruptcy court dealing with these same issues. Nor should there be because of the closeness of the relationship of these issues to the bankruptcy case, a fact clearly recognized by both parties based on their actions initially in presenting this dispute to this court.

The degree of relatedness or remoteness

■ Counsel for White Flint makes much of time that has elapsed since confirmation asserting that because the Plan has been substantially consummated this court should be reluctant to exercise post-confirmation jurisdiction. Under the circumstances, substantial consummation of the

Federated Plan does not strip this court of jurisdiction. As noted, the final decree has not yet been issued and the case remains open. Moreover, this case is clearly distinguishable from one in which the dispute is between a creditor and a third party over a contract incorporated into a confirmed plan that arose some five years after confirmation. *See In re Terracor*, 86 B.R. 671 (D.Utah 1988). The *Terracor* court rightfully concluded that the dispute was a post-confirmation matter that did not concern the administration of the estate and, thus should be tried in state court under state law.

Here, the dispute arose in November 1992, within a year of confirmation. Nor do we believe that the delay that occurred in this case in any way diminishes the relationship between the direct effect this dispute has on the administration of the debtor's estate and the subsequent successful emergence of Federated from chapter 11 proceedings. As pointed out by counsel for Federated, her client would have fought White Flint's claims for additional rental and contract default amounts under these assumed agreements no less vigorous had the matter been heard within the year after confirmation when those issues first arose (November 1992), or during the time when White Flint first sought payment of monetary damages and court enforcement of the lease and REA (December 1993) than at the present time. Federated's resistance to White Flint's demand for payment of the additional default payments spawned this litigation and the court concludes on this record that the mere passage of time between the dispute arising and the court's adjudication of these issues does not warrant voluntarily abstention in favor of trial of the parties' dispute in Maryland state court.[11]

11. The delay that occurred between the time when the dispute arose and the court's resolution is attributable to the case being reassigned to three different judges on this court. The original judge, Hon. J. Vincent Aug, Jr., recused himself from the case because of a conflict of interest (Main Case Doc. 10268).

Subsequently, the case was reassigned to the Hon. Burton Perlman (Main Case Doc. 10270). However, Judge Perlman was unable to preside over this adversary case because he had previously conducted settlement conferences between the parties and was concerned that those conversations might lead to the

Were we to decide otherwise, we believe Federated conceivably could be exposed to far greater risks of liability. There are limitations placed on the recoverable damages by the provisions of § 365 and the confirmed chapter 11 Plan in this case that bankruptcy court's are uniquely equipped to adjudicate. 11 U.S.C. § 365(b)(1); *See* Plan, p. 50. We also find that abstention could potentially reek havoc on the entire § 365 default claims adjudication procedure approved by the court in the disclosure statement order. The risk of an out break of new challenges by landlords or a reorganized Federated in numerous state and federal courts in this country is a compelling reason for our retaining jurisdiction over this dispute. Moreover, the decision whether to abstain in any other disputes erupting between the debtor and other similarly situated creditors over this issue should rest in the first instance with the bankruptcy court. This may require that this court exercise jurisdiction over a number of similar suits if brought in the future, for the court to only decide that abstention is the better course. But it is better to fail in this regard than to attempt to lay down a blanket rule without having seen the variety of factual situations and having heard the adversary presentations which time will undoubtedly afford. In this instance we conclude that this case has a close relationship to the bankruptcy proceeding which warrants our continued jurisdiction.

### Feasibility of severing state law claims

As earlier noted, we believe that the adversary Complaint for alleged pre-confirmation overpayments in substance constitutes counterclaims under Bankruptcy Rule 7001(1). It would create a severe strain on the bankruptcy court and the state court that would be assigned this case to attempt to litigate separately the so-called state law tax claims from the enforcement claims asserted in the Appli-

cation. Moreover, the argument for severance breaks down when one considers that the "proof of claim and adversary proceeding are 'logically connected' where both involve interpretation of the same contract and both arise out of the same transaction so that judicial economy and fairness dictate that both be adjudicated in the same forum." *In re Caldor, Inc.—NY*, 217 B.R. at 128 (citing *In re Lombard–Wall, Inc.*, 48 B.R. at 990). Because the dispute in this case over the § 365 default amount relates to a "civil proceeding" that concerns a core matter arising under title 11, this court's jurisdiction, though not exclusive, is paramount to the jurisdiction of Maryland state court. Based on these factors we conclude that it is not feasible to sever the state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.

### Remaining Factors

Finally, we conclude this proceeding will not burden the bankruptcy court's docket. Nor has either of the parties formally requested that the dispute be tried before a jury. In the event that White Flint does seek to have this matter heard by a jury, upon the consent of the parties, one can be obtained. 28 U.S.C. § 157(e). Absent the necessary consent of the parties, the matter can be transferred to the district court for a jury trial. *See Rafoth v. National Union Fire Ins. Co. (In re Baker & Getty Fin. Servs., Inc.)*, 954 F.2d 1169 (6th Cir. 1992). We agree with the *Refrigerant* court "the great weigh of factors favoring resolution of this dispute in this forum is not overcome by the possibility that a jury trial will also be involved." *In re Refrigerant*, 186 B.R. at 84.

### Conclusion

For the reasons expressed, we conclude this court has subject matter jurisdiction to hear and determine the dispute arising out of the lease and executory contract

---

perception that he could no longer be impartial (Adv.Doc.7). *See* Fed.R.Bankr.P. 5004(a). White Flint has suffered no prejudice from

these delays and is estopped from claiming any harm at this juncture.

assumed under the confirmed Plan since that matter involves a core proceeding related to the administration of the bankruptcy estate. We also find that abstention is not warranted on this record because both the claims and the parties are closely intertwined with the bankruptcy proceeding. Accordingly, the motion to dismiss the Complaint is hereby overruled, and the defendant shall have 10 days from this order within which to file a response.

**IT IS SO ORDERED.**