In re TRANS–SERVICE LOGISTICS, INC., Debtor.

Gregory M. Armstrong, Plaintiff,

v.

Trans–Service Logistics, Inc., et al., Defendants.

Bankruptcy No. 03–53732.
Adversary No. 03–2244.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Jan. 28, 2004.

Robert J. Tscholl, Jennifer L. Arnold, Canton, OH, for Plaintiff.

Cheri B. Hass, David A. Riepenhoff, Downes, Hurst & Fishel, Columbus, OH, for Defendants.

### ORDER GRANTING MOTION TO RE-MAND TO STATE COURT AND AN ORDER OF ABSTENTION

CHARLES M. CALDWELL, Bankruptcy Judge.

On February 14, 2003, Gregory M. Armstrong ("Plaintiff") filed a lawsuit in the Court of Common Pleas located in Coshocton County, Ohio. The Defendants are Trans–Service Logistics, Inc., William H. Waters, Jr. and Harley Robertson ("Defendants"). It is alleged that the Plaintiff was employed as a night dispatcher for Trans–Service Logistics, Inc. ("Debtor") from 1998 to October 8, 2002. William H. Waters, Jr. is the President and Chief Executive Officer, and Harley Robertson is the General Manager of the Debtor.

The two-count Complaint alleges violations of the Whistleblower's Protection Act (O.R.C. § 4113.52), and public policy. It is alleged that on October 6, 2002, the Plaintiff became aware that a load of meat, destined for public institutions that provide food to children, had been transported at an improperly high temperature. It is

alleged that the Plaintiff brought this problem to the attention of the management of the Debtor, particularly Mr. Robertson. The Plaintiff alleged that the next day he learned that the meat was being delivered as scheduled.

According to the Plaintiff, he checked on the delivery status because of questionable past practices, and the information prompted him to call the United States Department of Agriculture ("U.S.D.A."). It is alleged that the load was intercepted by the U.S.D.A., and was quarantined and destroyed as spoiled. The Plaintiff alleges that he was subsequently terminated on October 8, 2002. The Complaint contains specific references to negative comments allegedly made by Messrs. Waters and Robertson regarding Plaintiff's call to the U.S.D.A.

The Plaintiff asserts that his termination was in violation of the Whistleblower's Protection Act, and against the public policy embodied in the health and safety regulations governing meat producers, processors and transporters. The Plaintiff seeks a judgement against the Defendants in the total amount of $75,000.00, including pay, compensatory and punitive damages. The Plaintiff also requests an award of attorneys' fees and costs. A jury trial has been demanded.

On March 17, 2003, a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code ("Code") was filed on behalf of the Debtor. The bankruptcy filing served to stay the litigation as to the Debtor, but not Messrs. Waters and Robertson. 11 U.S.C. § 362(a)(1) and (3). On May 22, 2003, a Petition for Removal was filed with this Court, which effectively stayed any further action in the Court of Common Pleas. 28 U.S.C. § 1452(a), FRBP 9027(c). On June 20, 2003, the Plaintiff filed the instant Motion to Remand to State Court, and on July 18, 2003, the Defendants filed a Memorandum in Opposition. A hearing was conducted on September 5, 2003.

On November 17, 2003, a Notice of Suggestion of Death was filed indicating that the Plaintiff died on or about August 14, 2003. Also, on November 17, 2003, a Motion to Substitute Party–Plaintiff was filed to substitute Lori Armstrong as the Administrator of the Plaintiff's estate. In response, on December 5, 2003, the Defendants' Motion to Dismiss Armstrong Action and Memorandum in Opposition to Plaintiff's Motion to Substitute Party–Plaintiff was filed. On December 11, 2003, Plaintiff's Request to Defer Defendants' Motion to Dismiss was filed. In this pleading the Plaintiff requests that this Court not act on the dismissal request until a decision is made on remand.

Turning to the merits of the remand motion and the Defendants' response, the Plaintiff first argues that the removal was untimely, pursuant to 28 U.S.C. Sec. 1446(b), which governs the timeliness of removals to the United States Federal District Court. In this case, however, the dispute is governed by the bankruptcy removal statute (28 U.S.C. § 1452) and Federal Bankruptcy Rule 9027(a)(2), which contains the deadlines for timely removal in bankruptcy cases. *Aztec Industries, Inc. v. The Standard Oil Co., et al. (In re Aztec Industries, Inc.)*, 84 B.R. 464, 467–469 (Bankr.N.D.Ohio 1987). At the hearing counsel for the Plaintiff conceded that the Defendants acted timely under the bankruptcy removal statute and the applicable bankruptcy rule.

■ Next, the Plaintiff asserts that the mandatory abstention provision is applicable. 28 U.S.C. § 1334(c)(2). Typically, courts have considered the following six factors in deciding whether they are obligated to abstain:

1. a timely abstention motion;
2. a state law claim or cause of action;
3. no independent federal jurisdictional basis;
4. a claim that is "related to" but not "arising in" or "arising under" Title 11;
5. a parallel action commenced in state court; and
6. the ability to timely adjudicate the state court action.

*Frelin, et al. v. Oakwood Homes Corp., et al.*, 292 B.R. 369, 381 (Bankr.E.D.Ark. 2003); *Thomas, et al. v. R.J. Reynolds Tobacco Co., et al.*, 259 B.R. 571, 575–576 (S.D.Miss.2001); *Beneficial National Bank USA v. Best Receptions Systems, Inc. (In re Best Receptions Systems, Inc.)*, 220 B.R. 932, 951–952 (Bankr.E.D.Tenn. 1998); *Specialists, Inc., et al. v. Sea Products, Inc., et al. (In re Talon Holdings, Inc.)*, 221 B.R. 214, 220–221 (Bankr. N.D.Ill.1998).

■ Regarding mandatory abstention, the Court concludes that the cause of action is premised upon State not Federal law, and is merely "related to" this bankruptcy case, contrary to the Defendants' assertion. 28 U.S.C. Sec. 1334(b). *See generally,* Randall J. Newsome, Jurisdiction of the Bankruptcy Court, 479 PLI/ Comm 585 (1988) and David F. Heroy, Timothy A. French, Current Developments in Bankruptcy Jurisdiction: Abstention, Removal, Remand and Jury Trials, 655 PLI/Comm7 (1993) (Both articles provided an overview of bankruptcy court jurisdiction, removal, remand, abstention and jury trial rights).

■ The relationship arises solely from the fact that Messrs. Waters and Robertson are closely associated with the Debtor as an officer and an employee. For this Court to invoke the mandatory abstention provision, however, it would also be required to find that the lawsuit could be timely adjudicated in State court, so as not to harm the Debtor's reorganization. *E.S. Bankest, LLC v. United Beverage Florida, LLC. et al. (In re United Container LLC)*, 284 B.R. 162, 174–175 (Bankr.S.D.Fla. 2002); *In re Talon Holdings, Inc.*, at 221. The Court concludes that it has not been provided sufficient information to make a finding on this point.

In the alternative, the Plaintiff requests that the lawsuit be returned to the Court of Common Pleas based upon this Court's discretionary abstention powers, and its remand authority. Discretionary abstention is governed by 28 U.S.C. Sec. 1334(c)(1) which provides that, "(n)othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

■ Typically, the following factors are considered to determine whether courts should exercise their discretion to abstain:

1. the impact upon the efficient administration of the estate;
2. the extent to which State law issues predominate over bankruptcy issues;
3. the difficulty or unsettled nature of the applicable State law;
4. the jurisdictional basis;
5. the degree of relatedness to the bankruptcy case;
6. the existence of forum shopping;
7. the existence of the right to a jury trial;
8. the presence of non debtor parties in the case; and
9. any unusual or other significant factors.

*Thomas Underwood v. United Student Aid Funds, Inc. (In re Thomas Under-*

wood), 299 B.R. 471, 476–477 (Bankr. S.D.Ohio 2003); *In re Federated Department Stores, Inc., et al.*, 144 B.R. 998, 1001 (Bankr.S.D.Ohio 1992).

Remand, which involves many of the considerations relevant to discretionary abstention, is governed by 28 U.S.C. Sec. 1452(b) that states in relevant part as follows:

> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

■ In deciding whether to remand a lawsuit typically the following factors are considered:

1. any impact upon the efficient administration of the bankruptcy estate;
2. the extent to which issues of State law predominate;
3. any difficulty or unsettled questions regarding the applicable State law;
4. comity;
5. the degree of relatedness or remoteness of the lawsuit to the bankruptcy case;
6. the existence of a right to a jury trial;
7. any prejudice to the involuntarily removed parties;
8. the duplication of judicial resources; and
9. the greater expertise of the originating court.

*In re Thomas Underwood* at 478; *River Cement Co. v. Bangert Brothers Const. Co.*, 852 F.Supp. 25, 27 (D.Colo.1994), *citing General Instrument Corp., et al. v.*

*Financial and Business Services, Inc., (In re Finley)*, 62 B.R. 361, 366 (Bankr. N.D.Ga.1986); *Frelin, et al. v. Oakwood Homes Corp., et al.*, 292 B.R. at 383–384.

■ Based upon a review of the pleadings, and in particular the response of the Defendants, the Court has determined that the remand of the lawsuit and the exercise of this Court's discretionary abstention power are the appropriate remedies. Six factors were the most persuasive to this Court. First, regarding the jurisdictional nexus, the Plaintiff bases his claims primarily upon the Ohio Whistleblower's Protection Act. No provisions of the Code are involved, and contrary to the Defendants' assertions, the lawsuit is only within this Court's "related to" subject matter jurisdiction. Messrs. Waters and Robertson are not debtors, and are not subject to the automatic stay protections of this Court. But for the Debtor's bankruptcy filing, this Court would have no jurisdiction.

Second, in terms of impact upon the Debtor, contrary to the protestations of the Defendants, there should be none directly, in view of the continued imposition of the automatic stay solely as to the Debtor. Any indirect impact by virtue of the fact that Messrs. Waters and Robertson will be engaged in discovery should be minimal, given the fact that only one lawsuit is involved. This is not a case where a debtor's officers will be besieged with discovery requests and hearings in hundreds of cases, and any impact could be minimized through the cooperation of counsel and the parties. The Defendants have expressed the fear that the Debtor may become bound by any determinations that are made in the Court of Common Pleas. Any such impact, however, is inevitable in view of the allegations and the roles of Messrs. Waters and Robertson in the Debtor's operations.

Third, regarding the predominance of State law issues and relative expertise of the Court of Common Pleas, it is important to note that after the removal of the lawsuit the Plaintiff died. In fact, the parties are now prepared to litigate the legal significance of even this event. Most significantly, the Defendants have raised the issue of whether the Ohio Whistleblower's Protection Act is applicable to Messrs. Waters and Robertson, as individuals. It is this Court's conclusion, that the Court of Common Pleas has greater expertise in dealing not only with the merits of the underlying cause of action and its applicability to individuals, but also the new issues that arose with the death of the Plaintiff.

Fourth, regarding the prejudice to the removed party, this Court is concerned that the removal of this lawsuit may harm the Plaintiff's estate by the delay in discovery and prosecution that removal to this Court has caused and would cause should the matter not be returned to the Court of Common Pleas. Fifth, this Court is concerned that the failure to remand and abstain may deprive the Plaintiff of an opportunity to have the claims tried before a jury. *Rafoth v. National Union Fire Insurance Co. (In re Baker & Getty Financial Services, Inc.)*, 954 F.2d 1169, 1172–1174 (6th Cir.1992).

Sixth, the Court concludes that judicial economy and comity is served by remand and discretionary abstention for the following reasons. The Debtor has filed a plan and disclosure statement, and a disclosure hearing was conducted on January 26, 2004, with confirmation to follow on April 1, 2004. The issues raised by the Plaintiff, and now his estate, are ones that the Debtor is going to have to address in some form like all other creditors' claims.

Plan negotiations are premised upon accommodation by the parties, and a recognition that requests and legal positions can be compromised based upon the economic realities of the source of payment. The Debtor has already amended its plan to provide for a 10 percent dividend on the Plaintiff's claims. Successful plan negotiations could render the lawsuit moot. In the interest of judicial economy and comity, this Court should be allowed to act solely as a bankruptcy court and proceed to confirmation, while allowing the Court of Common Pleas to perform its role of interpreting Ohio law.

Accordingly, the Plaintiff's Motion to Remand to State Court is granted. 28 U.S.C. § 1452(b). In addition, this Court in its discretion, abstains. 28 U.S.C. § 1334(c)(1).

**IT IS SO ORDERED.**